## Callicott v. Allen.

[No. 4,438. Filed April 22, 1903. Rehearing denied June 25, 1903. Transfer denied November 3, 1903.]

Contracts.—*When Void as Against Public Policy.*—Contracts are not held void as against public policy, unless the contract itself requires the doing of something affecting the public good, or the consideration is immoral or hurtful, or is forbidden by statute. *p. 569.*

Mortgages.—*Taken in Name of Nonresident to Avoid Taxation.*—*Validity.* —*Public Policy.*—A mortgage executed in proper form and duly recorded is not void on the ground of public policy because taken in the name of a nonresident by whom it was assigned to the real owner, and the assignment withheld from record, in order to avoid the payment of taxes. *pp. 563–570.*

Vol. 31—36

Callicott v. Allen.

From the Superior Court of Vanderburgh County; *J. H. Foster*, Judge.

Suit by Harrison Callicott against Lucy S. Allen. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*C. L. Wedding*, for appellant.
*J. T. Walker*, for appellee.

WILEY, J.—The single question presented for decision by this appeal is the sufficiency of appellant's complaint, to which a demurrer for want of facts was sustained.

The complaint avers the following material facts: That one Charles Rucker on May 8, 1898, was the owner of certain real estate in the city of Evansville, Indiana, and that on that day, his wife joining him, he executed to one Charles D. Briggs, of the State of Illinois, a mortgage on the real estate, to secure the payment of one principal note for $1,200, due in three years from date, and certain interest notes maturing every six months thereafter; that such mortgage was duly recorded in Vanderburgh county; that appellee was, when this action was commenced, and for ten years prior thereto had been, a resident of said Vanderburgh county, and subject to taxation therein; that said sum of money represented by said mortgage and notes was the money of appellee, and that said mortgage and notes were executed and taken in the name of said Briggs, for the sole purpose of avoiding taxation on the same in the name of the appellee, and that after the execution of said mortgage the original mortgagor conveyed to appellant the real estate described therein, and that he is still the owner thereof; that after the said mortgage was recorded the said Briggs assigned the same, together with the notes, to appellee, who has been ever since and is still the owner thereof; that said assignment was purposely and corruptly kept off the records of said county in the furtherance of the scheme of appellee to avoid taxation; and that appellee

Callicott *v*. Allen.

has thereby escaped paying taxes thereon. It is averred that by reason of such facts said mortgage is fraudulent and void and against public policy, that the same is a cloud upon the title to appellant's real estate, and that it should be canceled and held for naught.

The question for decision rests upon a correct answer to the following inquiry: Is the mortgage which appellant seeks to have canceled fraudulent and void because it was taken, recorded, and assigned, for the purpose, on the part of the appellee, to avoid and escape taxation? If this inquiry is answered in the affirmative, it must be upon the sole ground that the transaction, as disclosed by the complaint, is against public policy.

Appellant's grantor, the original mortgagor, was in no way injured, for he received all he contracted for. The mortgage which he gave was duly recorded, and such record was notice to the world. It follows that when appellant took the title to the property, he took it with notice of the mortgage and subject to its lien. It does not appear from the complaint that he assumed its payment as part of the consideration, but the law lays on the property the burden of the mortgage, and the rule of *caveat emptor* applies. Appellant, therefore, in his individual capacity, was in nowise injured by the alleged fraud, for he is in the position of his grantor, and received all that he contracted for. The fraud of which he complains has not infringed his individual rights, nor affected his individual legal obligations. As between all the parties to the transaction and their privies, no fraud was perpetrated, for one received all the money for which he contracted and the other all the security. There was a valuable consideration moving from one to the other, and no fraudulent misrepresentation is charged.

Will a court of equity declare void the mortgage described in the complaint on the ground that it was executed and assigned in the manner disclosed for the purpose of

avoiding and escaping taxation? Fraud vitiates all contracts, but this rule should be applied to contracts superinduced by fraud on the part of one of the contracting parties, which has affected his individual rights. To illustrate: A and B enter into a contract, with which they are entirely satisfied. Neither of them is overreached, and they each get all the consideration for which they contracted. In such contract, however, A, with sinister motives, and with fraudulent intent, has perpetrated a fraud on C. Can B defend against his contract on the ground that A has defrauded C? There can be but one answer to this proposition, and that must be in the negative. The law will compel B to keep the covenants of his contract, and in like manner put into the hands of C the right to pursue his individual remedy against A for fraud, perpetrated upon him.

If the legal principle declared by the illustration which we have given is correct, the decision of the question presented becomes simple. Taking the facts pleaded as true —which we must for purposes of the demurrer—we find two parties entering into a contract. They both fully understood the terms of the contract, and they each received all they contracted for. The mortgagor was not misled in any way by false or fraudulent representations. The appellant now stands in the same relation to the contract that his grantor occupied, and he too received what he contracted for, and was not misled by any false or fraudulent misrepresentations on the part of the appellee. Up to this point, who has been injured in his or her individual rights? Certainly none of the parties to the transaction. The commonwealth, in its several governmental departments, is the only injured party, and it has not lost its remedy, for the law is ample in such cases to protect its rights. While the State was not a party to the contract, its rights were infringed, in that appellee, by her conduct, escaped the payment of her just proportion of taxes, which the law casts

upon her property. It is a maxim of law that there is no wrong without a corresponding remedy. In such cases who can enforce the remedy? Evidently, the wronged or injured party. If appellant can succeed in having the mortgage canceled will his injury thereby be avenged? Not his, for we have seen that he has none to avenge. Should we hold that he was entitled to have it canceled, the State would have additional injury thrust upon it, for it would be deprived of adequate assets out of which it could collect the taxes, which can, under the law, be assessed, for the mortgage is chattel, and subject to sale. These considerations lead us to the conclusion that, under the facts pleaded, the State occupies the position of C in the illustration given above. Appellant is in the attitude of seeking a court of equity to cancel a mortgage on his property which he has not paid, and which is a just burden upon it, and which he knew was there when he took the title, solely upon the ground that appellee has attempted to defraud the State out of a just proportion of its revenue. To declare such a rule would be equivalent to saying that if the payee of a promissory note sequesters it from the taxing officers, a payor could successfully defend against its collection on the ground that he had defrauded the State by not returning it for taxation. Where a mortgage is given to secure a note, the note, and not the mortgage, is assessable for taxation.

Our attention has been called in argument to some cases bearing upon the question here presented that we will now consider. Appellant relies principally for a reversal upon the cases of *Drexler* v. *Tyrrell,* 15 Nev. 114 and *Sheldon* v. *Pruessner,* 52 Kan. 579, 35 Pac. 204. In the Nevada case the mortgagee brought an action to foreclose a mortgage. The mortgagor defended on the ground that the mortgage had been taken by a nonresident of the state, and then assigned, to avoid the payment of taxes. The trial court found as facts that the mortgage was not so taken for

the purpose of defeating taxation, and that the plaintiff had, before the commencement of the suit, paid all the taxes due on the note secured by the mortgage. On appeal the judgment was reversed on the ground that the evidence showed that the mortgage was taken in the name of a third person—a nonresident—for the purpose of evading the payment of taxes, and that made the contract illegal and void. The Kansas case,. *supra,* was where a mortgagee residing in the state of Kansas assigned the mortgage to his father, who lived in another state, to secure the payment of $450 and interest for prior borrowed money, but really for the purpose of evading the payment of taxes. In a suit by the father to recover on the note and mortgage it was held that the mortgagee, on account of his acts in evading the payment of taxes, and thereby defrauding the revenues of the state, could not recover in the name of the father or otherwise on any part of the note and mortgage belonging to him. In the latter case the Nevada case, *supra,* is cited as authority and followed. When *Drexler* v. *Tyrrell* was decided, the supreme court of Nevada was composed of three judges, one of whom dissented. These two cases are the leading ones upon the question involved, and the only ones which have come to our attention, sustaining the theory of appellant.

In 55 Central Law Journal, at pages 121, 201, and 261, are three articles by the editor approving these cases. The two cases cited are not authority in this State, and we do not think the decisions rest upon sound reason or good law. They have been repudiated by other courts of high standing, and strongly criticised by an able text-writer.

In the case of *Crowns* v. *Forest Land Co.,* 99 Wis. 103, 74 N. W. 546, it was held that an answer in suit to foreclose a mortgage, alleging that the note and mortgage were taken in the name of the plaintiff for the purpose of enabling the real owner to evade taxation on account thereof,

presents no ground for a discharge of the mortgagor from his just debt. In the course of the opinion commenting on the *Drexler* v. *Tyrrell* case, *supra,* the court said: *"Drexler* v. *Tyrrell,* 15 Nev. 114, was cited to support that portion of the answer wherein it is alleged that the note and mortgage were taken in the name of Crowns for the purpose of concealing the same from the assessor, and thus escaping taxation. It is unnecessary to discuss this case. It is based upon the peculiar revenue laws of that state, which are referred to in the opinion, and has never been recognized as authority outside of its boundaries, so far as we have been able to discover. On the contrary, it has been severely and justly criticised in other jurisdictions, and is regarded as wrong in principle. Jones, Mortgages, §619. It is not charged that the note and mortgage in suit were, in themselves, illegal or contravened the policy of the law. The contract between the parties was one they were not prohibited in making, and, so far as anything appears in the answer, the mortgagor received full and complete consideration for it. The only taint in the transaction is the alleged violation of the revenue laws. The law of this state provides that taxes shall be levied upon all the property in this state except such as is exempt, R. S. 1878, §1034. Personal property shall be construed to mean and include, among other things, all debts due from solvent debtors, whether on account, note, contract, bond, mortgage, or other security, or whether such debts are due or to become due; Id. §1036. The taxpayer may be examined under oath, and, if he makes a false statement of his property, he is subject to a penalty of $10 on every $100 withheld from the knowledge of the assessor. Id. §1056; S. & B. Ann. Stats. §1056a. When the revenue laws provide ample punishment for the evasion by taxpayers of their just dues, it would seem a monstrous injustice to permit a mortgagor to defeat the payment of his debt by bringing any such issue

into a suit brought to foreclose his mortgage. The alleged turpitude of the mortgagee furnishes no ground for the discharge of the mortgagor from the payment of his just debt."

The case of *Nichols* v. *Weed Sewing Mach. Co.*, 27 Hun (N. Y.) 200, affirmed in the 97 N. Y. 650, was a case where one of the defenses interposed to the foreclosure of a mortgage was that it was against public policy, as the facts alleged showed that an attempt had been made to escape taxation. It was held that the defense could not prevail. In referring to the Nevada case, *supra,* the court said: "We have examined the case of *Drexler* v. *Tyrrell,* 15 Nev. 114, cited by defendant. As the case is not authoritative in this state, it is sufficient to say that we have considered the opinion of the majority of the court and the cases cited to sustain it; and we do not think it correct, or sustained by the citations. As we think, the opinion fails to appreciate that there is no illegality in the contract of the loan; and that the question is only whether one who has borrowed money shall repay it."

In a note following a reference to the case of *Drexler* v. *Tyrrell, supra,* in Jones, Mortgages (5th ed.), §619, the author severely criticised the rule there declared, in the following language: "But the cases cited in support of the decision are cases in which the consideration of the contract, as between the parties themselves, was either illegal or contravened the policy of the law. In the case before the court, however, there was nothing illegal in the contract as between the parties. It was a contract they were not prohibited from making, and there was a full and complete consideration for it. The only taint in the transaction was the intended fraud upon the revenue laws of the state. For this intended fraud the court upheld the mortgagor in refusing payment of the mortgage; they upheld him in a monstrous injustice, when the revenue laws of the state provided proper and ample punishment for an evasion of

them by criminal prosecution. The decision is regarded as wrong in principle."

By a reference to Jones, Mortgages (5th ed.), §618, wherein the author discusses the question of void mortgages, because they are repugnant to public policy, etc., it is clearly shown that the contract itself must be tainted with some illegal or wrongful act, and affecting the consideration.

A careful consideration of the authorities leads us to the conclusion that courts do not hold contracts void as against public policy, unless the contract itself requires the doing of something affecting the public good, or the consideration is immoral or hurtful, or that it is forbidden by statute. See Greenhood, Public Policy, 1; Story, Contracts (5th ed.), §§674, 675; *Kellogg* v. *Larkin,* 3 Pin. (Wis.) 123, 56 Am. Dec. 164; Beach, Contracts, §1415; Daniel, Neg. Inst. (4th ed.) §196; 1 Wiltsie, Mortgage Foreclosures, §342.

The case of *Stilwell* v. *Corwin,* 55 Ind. 433, 23 Am. Rep. 672, was an action by the appellee as administrator of the estate of Makepeace, deceased. One paragraph of the complaint was based upon the following writing: "Received of Allen Makepeace, for safekeeping, $14,500, in seven and three-tenths United States bonds; said bonds to be returned to said Makepeace, at any time called for. Interest on said bonds due August 15 and February 15. Anderson, Indiana, December 28, 1865. [Signed] J. G. & T. N. Stilwell." The two Stilwells were proprietors of a private bank, and Makepeace was a depositor therein. In an action to recover the bonds so deposited, one of the defenses interposed rested upon the facts, pleaded by way of answer, that Makepeace had on deposit in the Stilwell bank $14,500 in currency, which was subject to taxation, and that, to enable him to evade paying taxes thereon for the ensuing year, it was agreed between the parties that the certifi-

cate of deposit for said sum of $14,500 should be destroyed, and that the bank should be absolved from liability by reason of said deposit, and in lieu thereof they should execute the instrument sued on, which would not be subject to taxation; that, pursuant to said fraudulent scheme, said Makepeace did not list said $14,500 for taxation, and did thereby fraudulently and corruptly avoid the payment of taxes thereon. It was urged that the agreement set out in the answer was fraudulent and void, as being against public policy. In deciding the case the court held that the answer was not a bar, and said: "The allegations in the first paragraph of answer amount to no more than that Makepeace fraudulently refused to list his money, on deposit * * * and thereby fraudulently avoided paying the tax thereon for that year. These facts constitute no answer to the obligation against the Stilwells to deliver United States bonds to Makepeace, according to the terms of the written instrument set out in the complaint, even though they assisted him in the fraud, as alleged."

Counsel for appellant has submitted an able argument, supported by many authorities, to the effect that courts will not enforce contracts that are tainted with fraud or that are repugnant to public policy. We fully agree both with his argument and the rule declared by the authorities cited, but he has fallen into the error of assuming that the contract under which he seeks relief comes within the rule. The intention of the appellee to avoid the payment of taxes in the manner alleged in the complaint did not enter into the contract, and was not a part of the consideration. The contract, in itself, is not fraudulent, is not against public policy, and is not prohibited by statute.

As appellant has not been injured, he has no remedy to invoke, nor wrong to right, and the complaint does not state facts that entitle him to any relief. Judgment affirmed.