## McKINNON v. WATERBURY et al.

### (Circuit Court, D. Montana. March 13, 1905.)

### No. 246.

MORTGAGES—SUIT TO FORECLOSE—DEFENSE OF ILLEGALITY.

> The fact that a lender of money caused the note and mortgage taken therefor to be made payable to an alien, for the purpose of escaping local taxation thereon, does not render the contract itself invalid, and cannot be set up as a defense to a suit to foreclose the mortgage.

In Equity. Suit to foreclose mortgage. On exceptions to answer.

Forbis & Evans and W. H. Trippett, for plaintiff.

W. B. Rodgers, H. W. Rodgers, and J. W. James, for defendants.

HUNT, District Judge. This is an action by Rebecca McKinnon, a resident and citizen of Canada, against Edna R. Waterbury, John W. James, and H. W. Rodgers, residents and citizens of the state of Montana. The bill is brought to foreclose a mortgage executed on March 23, 1900, by Edna R. Waterbury, conditioned for the payment of the sum of $5,500 and interest, according to a certain promissory note, to secure which the mortgage was executed. Complainant alleges that the interest on the note has been paid by the defendant up to December 23, 1903, but that no part of the principal has been paid, and that the defendant is in default. The prayer is that a receiver be appointed to collect the rents and profits, and that the mortgage be foreclosed, and that the usual decree for sale be made, and that the interests of the defendants James and Rogers, if any they have, be declared subsequent to the plaintiff's mortgage. The defendant Edna R. Waterbury, for answer, admits signing the note described in the complaint, but denies that there was any consideration therefor passing from the said defendant to the said complainant; and she avers that the real party in interest, and the person to whom the note was in fact made, executed, and delivered,

and who is now the owner of the same, is one A. C. McKinnon, who was at the time of the execution of the note, and still is, a resident of the state of Montana. Defendant admits that she signed the mortgage described in the complaint, but denies the delivery of the said mortgage to the complainant, and avers that it was without consideration from complainant to defendant, and that the real party in interest, and the person to whom the said mortgage was in fact made and delivered, was the said A. C. McKinnon. She admits the payment of interest to December 23, 1903, but denies that the principal remains due and unpaid to the complainant; denies that the complainant is now or was the rightful owner and holder of the promissory note or mortgage. She admits that she has not kept the property insured as provided by the terms of the mortgage, but denies that complainant was obliged to pay any sums out as insurance. She denies that the property is insufficient to discharge the indebtedness sued for, or that a receiver is necessary. For a further defense, she sets forth that the defendant at the time of the execution of the mortgage was, and now is, a resident of Canada; that the owner thereof, A. C. McKinnon, was at the time of the execution of the mortgage and note, and was for a long time thereafter, and up to May, 1903, a resident of the state of Montana. She alleges that the consideration of the said pretended note and mortgage—the principal sum—was the money and personal property of said A. C. McKinnon, and was loaned to defendant upon his own account, and that the complainant never had any interest therein, or in the note and mortgage delivered to the said A. C. McKinnon, and that McKinnon was acting in his own behalf, and not as complainant's agent, and that the loan was made for his own benefit. She alleges that the said A. C. McKinnon directed the said note and mortgage to be executed in the name of the said Rebecca McKinnon, a nonresident of the state of Montana, for the purpose of defrauding the revenues of the county of Deer Lodge and of the state of Montana, and, being so executed to the said Rebecca McKinnon, the said A. C. McKinnon has from the day of its execution avoided the payment of all taxes to the county of Deer Lodge and to the state of Montana upon said note and mortgage. She alleges that the name of the complainant, Rebecca McKinnon, was used in said note and mortgage solely for the purpose of enabling the said A. C. McKinnon so to defraud the revenues and escape taxation upon the note and mortgage, and that there has been no assessment upon the note and mortgage up to 1903. Defendant prays that the note and mortgage be declared null and void. The complainant excepts to those parts of Edna Waterbury's answer which plead that the complainant is not the real owner of the note and mortgage, and that the mortgage was without consideration, and to the affirmative defense set up by the defendant, as impertinent and scandalous.

In my judgment, the doctrine of public policy cannot be invoked by the defendant to discharge her from the payment of her debt, which is justly due. She has received the full consideration of a contract which in itself did not require the doing of anything wrong, and which was not forbidden by the laws of the state. We must not confuse the contract itself with a collateral or incidental purpose of the mortgagee, which, though wrong, yet should not be a bar to the enforcement of the

agreement of the parties. Although the contract itself may have enabled the plaintiff to escape payment of taxes, still the intention of the complainant formed no part of the consideration, and the law will not refuse enforcement. I cannot agree with the argument that it becomes impossible to separate the taint surrounding the contract from the contract itself; nor do I believe that it follows that the court, in enforcing the contract, affirms an illegal stipulation thereof. The fallacy of this reasoning lies in regarding the purpose of the mortgagee to evade taxation as an element of the contract. In Hanauer v. Doane, 79 U. S. 342, 20 L. Ed. 439, after laying down the principle that a contract tinctured with the vice of giving aid and support to a rebellion against the United States could receive no sanction or countenance from the courts, Justice Bradley uses this language:

"Where to draw the precise line between the cases is which the vendor's knowledge of the purchaser's intent to make an unlawful use of the goods will vitiate the contract, and those in which it will not, may be difficult. Perhaps it cannot be done by exact definition. The whole doctrine of avoiding contracts for illegality and immorality is founded on public policy. It is certainly contrary to public policy to give the aid of the courts to a vendor who knew that his goods were purchased, or to a lender who knew that his money was borrowed, for the purpose of being employed in the commission of a criminal act, injurious to society or to any of its members."

A mortgagee who knows that his money is borrowed for the purpose of being employed in the commission of a criminal act cannot appeal to the courts to enforce the contract, upon the ground of public policy. But the principle, as stated, contemplates that the loan be made for the purpose of employment in the commission of a wrong. If, for example, the borrower in this case secured the loan to enable her to start a gambling house, and the lender knew of it, the contract would not be enforced; the ground in such a case being that the lender, having knowledge of the illegal end in view, will be deemed to have aided the illegal object at the time he made the contract. But that is not this case, for here there was no purpose to use the money for an unlawful purpose or for an illegal end. The owner of the note may be dealt with for having failed to pay taxes due to the state, but the mortgage debt is a valid one between the parties, and may be enforced. Hanover Nat. Bank v. First Nat. Bank, 109 Fed. 421, 48 C. C. A. 482; Crowns v. Forest Land Co. (Wis.) 74 N. W. 546; Nichols v. Weed Sewing Machine Co., 27 Hun, 200; Jones on Mortgages, § 619; Callicott v. Allen (Ind. App.) 67 N. E. 196.

The exceptions to the answer of the defendant are sustained.