### ALTER et al. v. CLARK.

(District Court, D. Nevada. June 15, 1911.)

#### No. 1,245.

**1. MORTGAGES (§ 32*)—ABSOLUTE DEED—SECURITY FOR DEBT.**

Where absolute deeds of certain real estate were executed solely to secure repayment of certain loans made by the grantee to the grantors, the property to be held by the grantee as his own until the loans were repaid to him, the deeds were mortgages.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 60–66; Dec. Dig. § 32.*]

**2. BANKRUPTCY (§ 184*)—TRANSFERS—VALIDITY—DELIVERY OF CHATTELS.**

Comp. Laws Nev. § 2703, provides that every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels unless the same be accompanied by an immediate delivery and be followed by actual and continued change of possession of the things sold or assigned, shall be conclusive evidence of fraud as against the vendor's creditors, or creditors of the person making such assignment, or subsequent purchasers in good faith, and section 2705 declares that no mortgage of chattels shall be valid for any purpose as against other than the parties thereto unless there shall be appended or annexed thereto the affidavit of the mortgagor and mortgagee, or some person in their behalf, setting forth that the mortgage is made in good faith and given for a debt actually owing from the mortgagor, stating the amount and character of such debt, and that it is not made to hinder, delay, or defraud any of the mortgagor's creditors. *Held*, that where certain deeds which were in fact mortgages purported to convey chattels as well as real estate, but there was neither delivery of the chattels to the mortgagee nor affidavit as required by section 2705, the deeds, in so far as they were mortgages of the personal property, were void as against the mortgagor's creditors and trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

**3. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—MORTGAGES—RIGHT TO RENTS AND PROFITS.**

Under Comp. Laws Nev. § 3357, providing that a mortgage of real property shall not be deemed a conveyance whatever its terms so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale, where an absolute conveyance of real property was in fact a mortgage, the grantee was not entitled to the rents and profits so long as the mortgagors remained in possession; and hence, on their becoming bankrupts, such rents and profits passed to their trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

**4. BANKRUPTCY (§ 172*)—TRANSFER BY BANKRUPT—VALIDITY—AVOIDANCE OF TAXES.**

Comp. Laws Nev. § 1215, requires the county recorder to be satisfied by affidavits that all state and county taxes due and payable on moneys

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

loaned have been paid before any mortgage or lien given as security therefor can be satisfied of record. Section 1084 requires the assessor to demand from each person a statement under oath or affirmation of all the real estate or personal property within the county owned or claimed by such person, and refusal or failure to make such statement on demand is a misdemeanor, and an affidavit knowingly false constitutes perjury. *Held*, that where defendant loaned money to bankrupts, receiving as security an absolute deed to certain real and personal property, which was in fact a mortgage, the fact that the security was made in the form of a deed to prevent the assessment and collection of taxes on the money loaned was collateral only, and did not so taint the security as to render it unenforceable as against the mortgagor's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 172.*]

5. BANKRUPTCY (§ 303*)—PREFERENCES—SETTING ASIDE—BURDEN OF PROOF.

In a suit to set aside an alleged preference, the burden is on the trustee to establish by a preponderance of the evidence the fact that defendant knew, or had reason to know, that the conveyance to him was intended as a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458, 459; Dec. Dig. § 303.*]

6. BANKRUPTCY (§ 303*)—PREFERENCES—KNOWLEDGE OF INTENDED PREFERENCE—EVIDENCE.

Where, in a suit by a bankrupts' trustee to set aside an alleged preference, the defendant testified that he did not know there were other creditors of the bankrupts than himself until the attachment suit was begun, such proof was not overthrown by evidence of the bankrupts that defendant knew that they were borrowing large sums of money from him.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.*]

7. BANKRUPTCY (§ 58*)—ACT OF BANKRUPTCY—PREFERENCE.

Since the court in determining whether an act of bankruptcy has been committed considers the intent of the debtor only, a preference which cannot be avoided because not having been accepted as such by the creditor may yet be sufficient to support an adjudication in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 58.*]

In Equity. Action by Henry Alter, trustee in bankruptcy of W. L. Wallace and another, individually and as partners under the name of Wallace & Blaisdell, and Wallace & Blaisdell, a copartnership, against A. J. Clark. Decree for plaintiff for part of the relief demanded.

J. B. Dixon, for plaintiff.
James T. Boyd and A. N. Salisbury, for defendant.

FARRINGTON, District Judge. This suit was brought by Henry Alter, as trustee in bankruptcy of the estates of W. L. Wallace and H. E. Blaisdell, individually and as copartners doing business under the firm name and style of Wallace & Blaisdell, and Wallace & Blaisdell, a copartnership, to procure a decree setting aside and annulling certain conveyances executed by the bankrupts to the defendant, A. J. Clark.

In September, 1903, Wallace & Blaisdell contracted with J. B. O'Sullivan for two lots in the town of Sparks. The price of the lots was $700. Of this amount they paid half in cash, giving their note for the balance, with interest at 6 per cent. per annum. Mr.

O'Sullivan's deed to them was placed in escrow, to be delivered on payment of the note. Soon after defendant Clark agreed to let them have money to build and furnish a hotel on the lots so purchased, provided the premises were deeded to him. There are in evidence two canceled checks drawn by Clark in favor of Blaisdell and Wallace, the first dated December 5, 1903, for $400, and the second dated December 12, 1903, for $2,600. There is also a third check for $125, dated November 23, 1903, drawn by Clark in favor of Blaisdell, which Blaisdell testifies was given to pay Sparks Mercantile Company for merchandise. December 12, 1903, Wallace and Blaisdell executed a bargain and sale deed, conveying the two lots to Clark; and on the same day, and as a part of the same transaction, there was an agreement in writing, signed by Clark, Blaisdell, and Wallace, in which Clark agreed to sell, and Blaisdell and Wallace agreed to buy, the lots for $3,000, with interest thereon at the rate of 6 per cent. per annum. Blaisdell and Wallace further agreed:

"To pay to the said party of the first part (Clark) the said sum of $3,000 in United States gold coin, on or before two years from date, with interest thereon at the rate of 6 per cent. per annum from date until paid, interest payable semiannually."

They also agreed to pay all taxes levied on the property, and to keep it insured for not less than three years. If taxes or insurance were paid by Clark, the sums so paid were to be added to the $3,000, and draw 6 per cent. interest. It was further stipulated that, in case Blaisdell and Wallace failed to comply with the terms of this agreement, Clark should be released from all obligation in law or equity to convey the premises to them, and they should forfeit all rights thereto. On the cover of this agreement there is a receipt for one year's interest, $180, dated January 16, 1905, and signed "A. J. Clark." This deed was recorded the day of its execution. The agreement was never recorded.

There is in evidence a second deed from the same grantors to the same grantee, and also a similar agreement between them, both dated and executed more than one year later, January 18, 1905. In addition to the lots, this second deed conveys all merchandise, furniture, and fixtures on the premises. In the agreement Clark promises to sell, and Wallace and Blaisdell agree to buy, the property described in the deed for $5,000, with interest thereon at 8 per cent. per annum from January 16, 1905. Blaisdell and Wallace also agree to pay Clark "said sum of $5,000 in United States gold coin, on or before two years from date, with interest thereon at the rate of 8 per cent. per annum from the 16th day of January, 1905, interest payable semiannually." They further agree to keep the buildings insured for not less than $5,000, and to pay all taxes. The contract concludes with a stipulation terminating the previous agreement, stating that the $3,000 of the first contract is included in the $5,000; otherwise the terms of the two contracts are identical. This second deed and agreement were both recorded January 21, 1905.

The checks and check stubs in evidence show, in connection with Clark's testimony, that he let Blaisdell and Wallace have about $2,-

000 in 1904; $500, January 20, 1905; $800, January 21, 1905; and about $2,000 thereafter and some time prior to May 5, 1905. A portion of the money so advanced was repaid. May 4, 1905, Blaisdell assigned to Wallace all his interest in the agreement of January 18th, and the partnership theretofore existing between the two men was dissolved. Seven days later, on the 11th day of May, 1905, a new deed was executed by Wallace to Clark, and a new agreement was signed by them. In the last agreement the promise to reconvey was for the sum of $6,127.75, with interest at 8 per cent. per annum, and Wallace promised to pay Clark that amount in United States gold coin on or before two years from date, with interest thereon at 8 per cent. per annum from May 11, 1905, interest payable monthly; otherwise there is no substantial difference between the terms of the deed and agreement of January 18th, and the terms of the deed and agreement of May 11, 1905. The last deed and agreement were recorded May 17, 1905. Less than a month after these instruments were recorded, and 33 days after they were executed, on the 13th day of June, 1905, an involuntary petition was filed in this court, praying that Blaisdell and Wallace, as individuals and as copartners, and the copartnership itself, be adjudged bankrupt. Such an adjudication was made; for Wallace, July 6, 1905, and for Blaisdell, January 22, 1908.

The allegation of the bill is that the deeds of December 11, 1903, and January 18, 1905, were in effect mortgages, and were given solely to enable defendant to avoid the payment of taxes. The averments as to the deed of May 17, 1905, are that it was given as security for the payment of all moneys due Clark from Wallace and Blaisdell, and also as security for a small additional amount loaned by defendant to Wallace during the month of May, 1905; that it constituted a discharge of the two previous deeds; that it was asked and given to enable defendant to defraud the state of Nevada of the taxes due on said loans; that Wallace, Blaisdell, and Wallace & Blaisdell were insolvent when the last deed was given, a fact well known to defendant at and before the time of his taking such deed; that said deed was given by said bankrupt and accepted by defendant, with intent to prefer defendant as a creditor of said bankrupts, and with further intent to hinder, delay, and defraud other creditors of their "lawful debts and demands, * * * and by reason of such fraud said deed is null and void."

[1] It is very clear that the transaction here was a loan, and that the deeds were given by the bankrupts as security. Mr. Blaisdell testified that they represented to Mr. Clark that they "would hold the property as his property until these loans were paid to him." The money obtained from Clark was used in constructing and furnishing a hotel building on the two lots described in the deed, and in the conduct of the business. The two men also put into the concern about $3,800 of their own money. Clark says: "I gave them the money, and could not tell what they did with it. They would not say what they wanted it for." Some of the payments were for temporary loans, and were repaid. The deed shows the correct amount. Clark also testifies, in substance, that he agreed to furnish the money

for a hotel "on condition that the property would be deeded" to him. "They were to get what they needed, and to draw on me for what they needed for the building and furnishing, and so forth." When asked, "Why did you not take a mortgage in this case?" Mr. Clark replied, "Because I took a deed of it. It is my custom to take deeds instead of mortgages."

[2] The claim that this was merely a conditional sale, and that Clark was the absolute owner of the property, is without merit. Each of the three deeds, with its accompanying agreement, constitutes a mortgage as to the realty. In so far as each deed purports to convey personal property, it is good between the parties; but, as against creditors of the trustee in bankruptcy, it is invalid. There was no delivery of the personal property to Clark. It remained in the exclusive possession of Blaisdell and Wallace. Comp. Laws Nevada, § 2703. Furthermore, there was an utter failure to comply with section 2705 of the Compiled Laws of ·Nevada, in which it is enacted that no mortgage of chattels—

"shall be valid for any purpose as against other than the parties thereto, unless there be appended or annexed thereto the affidavits of the mortgagor and mortgagee, or some person in their behalf, setting forth that the mortgage is made in good faith, and given for a debt actually owing from the mortgagor, stating the amount and character of such debt, and that the same is not made to hinder, delay or defraud any creditor of the mortgagor."

The deeds to Clark, in so far as they convey or attempt to convey personalty, are therefore void as against plaintiff. The rents collected by the trustee cannot be recovered by defendant.

[3] Under the Nevada statute (Comp. Laws, § 3357):

"A mortgage of real property shall not be deemed a conveyance, whatever its term, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale."

So long as Blaisdell and Wallace remained in possession of the property, they were entitled to apply its rents, issues, and profits to their own use. Their contract was to pay interest, not rent. When the trustee in bankruptcy took possession of the property, he took it "with the title of the bankrupt," and with the same right to retain the rents prior to foreclosure, which the bankrupt had while they remained in possession. 1 Jones on Mortgages, §§ 670, 771; Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 23 L. Ed. 415.

[4] Practically the only proof that Clark's purpose was to evade his taxes is the fact that the money loaned to the bankrupts was neither assessed nor taxed. Mr. Clark paid all taxes on the property, though it was provided in each agreement that this should be done by Blaisdell and Wallace. Had the parties employed a mortgage instead of an absolute deed, both property and money loaned would undoubtedly have been taxed. Mr. Clark says he preferred to take a deed because he regarded it as the better security. The Nevada statute ·(Comp. Laws, § 1215) requires the county recorder to be satisfied by affidavit that all state and county taxes due and payable on moneys loaned have been paid before any mortgage or lien given as security therefor can be satisfied of record. Before entering a decree of fore-

closure, the courts of this state must require a similar affidavit, and delay proceedings until such proof is forthcoming.

Section 1084 requires the county assessor to demand from each person "a statement under oath or affirmation of all the real estate or personal property (and this includes moneys secured by mortgage or otherwise) within the county, owned or claimed by such person." Refusal or failure to make such a statement on demand is a misdemeanor, and an affidavit knowingly false is perjury. The assessor in such case must estimate the value of the property himself, and assess it accordingly. The statute has thus made ample provision for the discovery and ascertainment of all loans secured by deed rather than mortgage, and also for the punishment of those who fail or refuse to give in their property to the assessor. If the assessor had performed his duty by requiring a sworn statement from Mr. Clark, the money loaned by him to Blaisdell and Wallace would undoubtedly have been listed and taxed.

Drexler v. Tyrrell, 15 Nev. 114, cited by plaintiff, was a suit to foreclose a mortgage. The money was loaned by one resident of this state to another, but, at the request of the lender, the mortgage was executed to a citizen of California, for the purpose of preventing an assessment, and thus evading the payment of taxes. Executing this mortgage to a nonresident was equivalent to a representation that the money loaned belonged to a nonresident, and therefore could not be assessed in this state. It was held by a divided court that the purpose to evade payment of taxes and to prevent assessment of the money loaned tainted the whole contract, and that such contract could not be enforced in favor of a party at whose instance and for whose benefit it was entered into. The rule to be gathered from the authorities cited by Justice Leonard is that, if a contract sought to be enforced is expressly or impliedly forbidden by statute or by common law, no court will lend its assistance to give it effect, but, when the consideration and the matter to be performed are both legal, and the illegality is collateral and incidental, and occurs in carrying the contract into effect, but does not enter into or form a part thereof, and is not contemplated thereby, it will not preclude a recovery. This undoubtedly is a correct expression of the law, but its application to the facts in Drexler v. Tyrrell has never been approved in but one court outside Nevada, so far as I have learned. Elsewhere it has been severely, and I think justly, criticized.

In Nichols v. Weed Sewing Machine Co., 27 Hun (N. Y.) 200, 206, the court says:

"We have examined the case of Drexler v. Tyrrell, 15 Nev. 114, * * * and we do not think it correct or sustained by the citations. As we think, the opinion fails to appreciate that there is no illegality in the contract of loan."

In a note in 1 Jones on Mortgages, appended to section 619, the author criticizes Drexler v. Tyrrell in the following language:

"But the cases cited in support of the decision are cases in which the consideration of the contract, as between the parties themselves, was either illegal or contravened the policy of the law. In the case before the court, however, there was nothing illegal in the contract as between the parties.

It was a contract they were not prohibited from making, and there was a full and complete consideration for it. The only taint in the transaction was the intended fraud upon the revenue laws of the state. For this intended fraud the court upheld the mortgagor in refusing payment of the mortgage. They upheld him in a monstrous injustice, when the revenue laws of the state provided proper and ample punishment for an evasion of them by criminal prosecution. The decision is regarded as wrong in principle."

In Callicott v. Allen, 31 Ind. App. 561, 67 N. E. 196, speaking of the same case, the court says:

"We do not think the decision rests upon sound reason or good law."

In Crowns v. Forest Land Co., 99 Wis. 103, 74 N. W. 546, the Court says of the Nevada case:

"It has never been recognized as authority outside of its boundaries so far as we have been able to discover: on the contrary, it has been severely and justly criticized·in other jurisdictions, and is regarded as wrong in principle."

Judge Ross in Waterbury v. McKinnon, 146 Fed. 737, 77 C. C. A. 294, says that the Nevada decision is not sound.

There is no law in Nevada which prohibits the taking of an absolute deed as security for a loan. There is nothing illegal in such a contract. My attention has not been called to any statute declaring void a deed given as security executed and received in order to enable the lender to evade his taxes. The deeds and the defeasances in this case simply rendered Clark's money more difficult of discovery. No more difficult, however, than if he had taken a promissory note without security, or made the loan merely upon an oral promise to repay. Loaning money on a promissory note certainly is not against public policy. I am of the opinion that, if Mr. Clark took a deed rather than a mortgage because he might thereby more easily avoid the payment of his taxes, it was a matter collateral to the contract between himself and the bankrupts. This conclusion is abundantly supported by the following authorities: Crowns v. Forest Land Co., 99 Wis. 103, 74 N. W. 546; Nichols v. Weed Sewing Mach. Co., 27 Hun (N. Y.) 200, 206; Id., 97 N. Y. 650; 27 Cyc. 1127; Gilmore v. Roberts, 79 Wis. 450, 48 N. W. 522; McKinnon v. Waterbury (C. C.) 136 Fed. 489; Waterbury v. McKinnon, 146 Fed. 737, 77 C. C. A. 294; 1 Jones on Mortgages, § 619; Callicott v. Allen, 31 Ind. App. 561, 67 N. E. 196; Stilwell v. Corwin, 55 Ind. 433, 23 Am. Rep. 672; Hanover National Bank v. First National Bank, 109 Fed. 421, 426, 48 C. C. A. 482.

[5] Plaintiff has the burden of proof. He must establish by a preponderance of the evidence the fact that defendant knew, or had reason to know, that the conveyance to him was intended as a preference.

[6] Clark testifies that he did not even know there were creditors other than himself until the attachment suit. True this statement is not conclusive, but it must stand until overthrown, and for that purpose evidence to the effect that he knew Blaisdell and Wallace were borrowing large sums of money from him is wholly insufficient. No one of the three deeds can be set aside under section 60b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St.

1901, p. 3446]), because it is not shown that the defendant had "reasonable cause to believe that it was intended thereby to give a preference."

The deed and agreement dated May 11th were given within four months prior to the filing of the petition. The proof on this hearing that these instruments were given with intent ·to defraud other creditors, that either Wallace or Clark was actuated by such a purpose, is insufficient. Furthermore, the last deed was either in lieu of or in renewal of previous securities. The real property mortgaged is the same in all the deeds. It is not shown that Clark at the time knew that Wallace was insolvent, or had other creditors. Apparently the deed was taken by him to protect his own rights. Chattanooga National Bank v. Rome Iron Co. (C. C.) 102 Fed. 755, 757.

[7] In the briefs filed counsel has called attention to the fact that the execution of the deed in question constituted the act of bankruptcy on which the adjudication was had. Whether the evidence offered in the two proceedings was the same I am unable to say; but it is unquestionably true that a preference which cannot be avoided by the trustees may yet be sufficient to support an adjudication. This is so, because the court in determining whether an act of bankruptcy has been committed considers the intent of the debtor only; but a preference cannot be set aside as voidable unless it is shown that the person to be benefited "has had reasonable cause to believe that it was intended thereby to give a preference." Loveland on Bankruptcy, § 52.

The deeds as mortgages of realty are valid. In so far as they were intended to convey or mortgage personal property, they are invalid as against complainant. Defendant is not entitled to rents collected by plaintiff.

Counsel may prepare findings and a decree in accordance with the opinion above expressed.