LORRAINE HIATT *v.* EUGENE H. YERGIN ET AL.

[No. 871A145. Filed June 22, 1972. Rehearing denied August 14, 1972. Transfer denied February 21, 1973.]

*Vance M. Waggoner,* of Rushville, for appellants.

*Alan E. Yergin,* of New Castle, *Frank E. Spencer,* of Indianapolis, *Marshall E. Hanley,* of Muncie, and *Thomas C. Cone,* of Greenfield, for appellees.

BUCHANAN, J.—STATEMENT OF THE CASE AND FACTS—This is an appeal from an adverse decision by the trial court against plaintiffs-appellants, W. H. and Lorraine Hiatt (Hiatt) on their Complaint for Damages and Specific Performance of two agreements for the sale and repurchase (resale) of corporate stock between Hiatt and defendants-appellees, Eugene H. Yergin, Beatrice R. Yergin, John D. Yergin, Betty L. Yergin (Yergin), and Henry County Beverage Company, Incorporated.

Hiatt's one paragraph Complaint,[1] filed in the Henry Cir-

---

1.                    "PLEADING PARAGRAPH I.

"Plaintiffs, and each of them, for complaint against defendants, and each of them, says:

"1. On November 30, 1968, plaintiffs and defendants, Eugene H. Yergin, Beatrice R. Yergin, John D. Yergin, Betty L. Yergin, entered

into two written contracts, an Agreement by which defendants, Yergins, purchased from plaintiffs, Hiatts, 500 shares of the capital stock of defendant Henry County Beverage Company, Incorporated, a copy of which is attached hereto, made a part hereof the same as if fully set forth herein, and marked Exhibit A, of 2 pages, and an Agreement for Repurchase of said capital stock by plaintiffs from defendants, Yergins, a copy of which is attached hereto, made a part hereof the same as if fully set forth herein, and marked Exhibit B.

"2. Plaintiffs, and each of them has duly performed all the conditions of said agreements on his part to be performed, except that plaintiffs were prevented by defendants, Yergins, from completing their tender of repurchase money, but offered to repurchase, and are and have been at all times applicable herein ready, willing and able to make such tender, perform and complete such repurchase.

"3. Plaintiffs have on two occasions made written demand on said defendants, Yergins, and each of them, for the return of said capital stock of defendant, Henry County Beverage Company, Incorporated, pursuant to the terms of said agreement, Exhibit B herein, each of which by copy is attached hereto, made a part hereof the same as if fully set forth herein, and marked respectively Exhibit C and Exhibit D, of 4 pages, and on each occasion the parties met at the time and place respectively stated and defendants, Yergins, on each meeting refused to deliver said capital stock to plaintiffs, which defendants Yergins have the present capacity so to do, unless plaintiffs first produced a federal basic permit in their names for the operation of defendant, Henry County Beverage Company, Incorporated, did not produce said capital stock for delivery, and wholly failed and refused to perform, and have continuously failed and refused to perform as required of said defendants, Yergins, by said written agreement, Exhibit B herein.

"4. Defendants, Yergins, to the injury of plaintiffs further continuously since November 30, 1968, assume 50% ownership of defendant Henry County Beverage Company, Incorporated, equal representation upon its Board of Directors with the other 50% shareholders, ownership and entitlement to 50% of its corporate assets, earnings, surplus profits and dividends of not less than $50,000.00 annually, and certain salaries therefrom, all of which are the property of and jointly due plaintiffs to plaintiffs damage in the sum of $500,000.00 in addition to the 500 shares of said capital stock of defendant, Henry County Beverage Company, Incorporated, wrongfully withheld by defendants, Yergins, from plaintiffs.

"5. Henry County Beverage Company, Incorporated, is made a party defendant to this action to answer and account to plaintiffs for its every corporate act during the pendency of this action and while defendants, Yergins, exercise 50% ownership and control of said corporation and to withhold all wages, salaries, earnings, surplus profits, dividends, property and assets of said defendant corporation from said Yergins, and each of them, until final adjudication of the action herein and determination of entitlement thereto, and that said defendant, Henry County Beverage Company, Incorporated, shall not amend, alter or change its corporate operation, organization procedures, form, name or structure in any manner during the pendency of this action except on petition, notice and hearing, and order of this Court.

"6. Said agreement, Exhibit B herein, is just and equitable and plaintiffs suffer irreparable injury unless defendants, Yergins, are compelled to perform the conditions of said contract on their part to

cuit Court on February 27, 1970, consisted of seven rhetorical paragraphs. The first rhetorical paragraph alleges the existence of two written contracts, one an agreement whereby Yergin would purchase from Hiatt 500 shares of capital stock of Henry County Beverage Company, Incorporated, and an agreement for repurchase of this capital stock by Hiatt. In rhetorical paragraph 2 Hiatt alleges that he and Lorraine Hiatt performed all the conditions of the agreements but

be performed and defendants are compelled to assign and transfer said shares of capital stock of defendant, Henry County Beverage Company, Incorporated, to plaintiffs; and unless defendants are compelled to account, inform, and segregate and hold in trust funds and property accruing to defendant, Henry County Beverage Company, Incorporated, as delineated in rhetorical paragrph 5, above and unless defendants are prevented from doing otherwise, plaintiffs suffer and will continue to suffer great and irreparable injury which injury will be lasting and permanent.

"7. Plaintiffs are without an adequate remedy at law.

"WHEREFORE, plaintiffs sue and demand judgment against defendants, Eugene H. Yergin, Beatrice R. Yergin, John D. Yergin, Betty L. Yergin, jointly and severally in the sum of $500,000.00, and further that said defendants be compelled by said judgment and order of this Court to assign and transfer said 500 shares of Henry County Beverage Company, Incorporated, capital stock to plaintiffs, pursuant to the agreement between them; that defendant, Henry County Beverage Company, Incorporated, be compelled by said judgment and order of this Court to so transfer said 500 shares of its capital stock on the proper records of said corporation and issue a new certificate for 500 shares of its capital stock to plaintiffs; that defendants, jointly and severally, be restrained, enjoined and mandated to answer and account to plaintiffs for every corporate act of said Henry County Beverage Company, Incorporated, during the pendency of this action and until any judgment herein against defendants, or any of them, is fully discharged, paid and satisfied; that defendant, Henry County Beverage Company, Incorporated, be restrained, enjoined and prohibited from disbursing, paying over, distributing to or dividing with defendants, Yergins, jointly or severally, any wages, salaries, earnings, surplus profits, dividends, property, and any and everything of value of said defendant corporation, and be mandated to hold the same in trust, pending judgment of ownership thereof herein and until any judgment against defendants or any of them herein is fully discharged, paid and satisfied; that defendants, jointly and severally, be restrained, enjoined and prohibited from amending, altering or changing its corporate operation, organization procedures, form, name or structure in any manner during the pendency of this action and until any judgment against defendants or any of them, herein is fully discharged, paid and satisfied, the costs of this action against defendants and for all other proper relief.

"/s/ Vance M. Waggoner
"Vance M. Waggoner, Attorney For Plaintiffs."

were prevented from repurchasing the stock by Yergin's refusal to complete the repurchase after tender of the repurchase money. Paragraph 3 alleges that after written demand Yergin refused to deliver the capital stock unless Hiatt first produced a federal basic permit and that Yergin failed to perform as required by the repurchase agreement. Hiatt seeks $500,000.00 in damages in rhetorical paragraph 4, due to the injury caused by Yergin's wrongfully withholding the 500 shares of capital stock and the financial benefits flowing therefrom. By rhetorical paragraph 5 Hiatt seeks to have the defendant, Henry County Beverage Company, Incorporated, account for each corporate act until final adjudication of the action and that it not change its corporate operation or organization or procedures during such time. In rhetorical paragraphs 6 and 7 plaintiff alleges irreparable injury unless Yergin is compelled to transfer the 500 shares and to perform the conditions of the contract and unless all the defendants account and hold in trust funds and property coming into their possession; and that unless prevented from doing otherwise Hiatt will suffer irreparable injury and that he is without an adequate remedy at law.

The prayer of the Complaint is accordingly. Hiatt, as plaintiff, seeks $500,000.00 damages jointly and severally against Yergin; asks the court to compel the transfer of the 500 shares of capital stock and that Yergin and the other defendant, Henry County Beverage Company, Incorporated, be enjoined from certain corporate and financial acts, including payment of earnings or salaries to Yergin, and to account therefor and hold everything of value in trust and not to change corporate operation and procedures or the corporate name; and for costs and other proper relief.

The exact words "specific performance" are not used in the prayer, although it is clear the effect of the relief sought is specific performance as the court is requested to require the transfer of the 500 shares of capital stock in question and the issuance of a new stock certificate accordingly.

On March 17, 1970, Yergin filed an Appearance and a Motion For Extension Of Time In Which To File Answer or Motion, which the court granted, giving Yergin an additional fifteen days to file a responsive pleading. On April 3, 1970, Yergin filed a Motion to Strike certain portions of Hiatt's Complaint.

On April 26 the cause was venued to Hancock County, and on May 4 Hiatt filed an Application for Default Judgment. On the same day Yergin filed an Answer in two paragraphs to the Complaint which specifically denied certain allegations and generally denied others. Three days later, on May 7, Hiatt filed a Reply to the Answer.

Then, on May 13 Hiatt filed a Demand For a Jury Trial in these words (omitting formal parts) :

"Plaintiffs, and each of them, demand a trial by jury of the action herein and the issues formed on the pleadings herein."

In response, Yergin, on May 20, filed Objections to a Jury Trial, alleging that (1) the Motion for Jury Trial was not timely filed, and (2) the relief sought by Hiatt in their Complaint was of an equitable nature, and under Rule TR. 38 should be tried by the court. On September 9, 1970, the trial court granted Hiatt's Motion For a Jury Trial, but on November 11 reversed itself and sustained the Objections to trial by jury.

The record does not disclose any ruling on Hiatt's Motion for Default Judgment.

At the conclusion of the evidence, the court entered SPECIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW, which may be summarized thusly:

After prolonged negotiations, Hiatt and Yergin entered into an original sales agreement and a resale agreement on the same date, November 30, 1968. Two separate instruments provided for the sale to Yergin and the possible resale to Hiatt of 500 shares of the capital stock of the Henry County Beverage Company, Incorporated, which was a beer whole-

sale business operating subject to the regulations of the Alcohol, Tobacco and Firearms Division of the Internal Revenue Service (IRS).

Under the terms of the original sales agreement, Yergin as buyer paid Hiatt as seller the sum of $500.00 as earnest money to be applied on the total purchase price of $85,000.00 immediately upon the issuance of a Federal Basic Permit by the IRS and the approval of the transfer of the stock by the Alcoholic Beverage Commission of the State of Indiana (ABC). The parties further agreed to use all "reasonable diligence" in obtaining said Permit and approval.

In the event the IRS should not issue a Permit or the ABC not approve the transfer of the stock as contemplated, then the agreement would be null and void and the buyer, Yergin, would be entitled to a return of the $500.00 earnest money deposit.

The resale areement of the same date provided that Hiatt would sell the same 500 shares of stock of the Henry County Beverage Company, Incorporated, to Yergin upon the "same terms and conditions under which said stock was purchased" and for the same price in the event Hiatt was unable to obtain control and ownership of the Norris Beverage Distributors and obtain a Federal Basic Permit for the operation of Norris Beverage Distributors and approval of the transfer by the ABC to such ownership and control.

On January 7, 1969, the IRS issued a Federal Basic Permit to the Henry County Beverage Company, Incorporated, to operate it as a beer wholesale business, and on January 10, 1969, the ABC granted its approval to the contemplated transfer of stock. Both of these permits were issued on the basis that Eugene H. Yergin and John D. Yergin owned 25% each of the stock in the corporation.

Hiatt then assigned the 500 shares of stock to Yergin and received in return the full contractual price ($85,000.00).

On January 13, 1969, Hiatt, in the name of Rose City

Beverage, Inc., made an application to the IRS for a Federal Basic Permit to operate Norris Beverage Distributors and also made application to the ABC, in the same name, for approval of the transfer.

Hiatt received notice from the IRS that disapproval of the application was contemplated because of Hiatt's wrongdoing in previously owning a hidden interest in Norris Beverage Distriutors contrary to Indiana law, which was not disclosed when making application for the Federal Basic Permit.

Hiatt had a right to appeal this decision of the IRS disapproving the application and he did ask for a hearing on appeal, and a hearing date was set for 10:00 A.M. on July 24, 1969. On July 18, 1969, Hiatt withdrew his appeal because of an alleged illness. IRS ". . . would have granted a continuance on said hearing had it been requested so to do . . ."

The parties to these agreements were aware that any time 10% or more of the stock in Henry County Beverage Company, Incorporated, changed hands, it was necessary to obtain both a Federal Basic Permit from the IRS and the approval of the ABC.

Hiatt did not use due diligence in obtaining a Federal Basic Permit to operate Norris Beverage Distributors. Also, neither Mr. Hiatt nor Mrs. Hiatt ever made application after November 30, 1968 to the IRS for a Federal Basic Permit so that Henry County Beverage Company, Incorporated, could operate as a beer wholesale business with either or both of the Hiatts as major stockholders. Further, neither Mr. Hiatt nor Mrs. Hiatt ever made application to the ABC for a permit approving the retransfer of the stock from Yergin to either or both of the Hiatts. The inability of Hiatt to obtain a Federal Basic Permit was due to the wrongdoing of W. H. Hiatt.

If the specific requested in the Complaint was granted, an operating business would be closed, causing irreparable harm to the owner of the other 500 shares of the Henry County Beverage Company, Incorporated.

On July 10, 1969, Hiatt gave notice to Yergin of a demand for the sale back to them of the 500 shares of capital stock of Henry County Beverage Company, Incorporated, and Yergin either failed or refused to resell the stock to Hiatt.

The court's CONCLUSIONS OF LAW were in essence:

(1) The obtaining of a Federal Basic Permit from the IRS and approval of a transfer by the ABC were conditions precedent of the original sales contract, and therefore conditions precedent to the resale contract, for the reason that the resale contract is based "on the same terms and conditions and for the same price" as the original sales agreement.

(2) That the parties by their words and actions intended that the obtaining of a Federal Basic Permit and approval by the ABC of the transfer were conditions precedent to the original sale of stock, and that the parties also by their words and actions intended that the obtaining of a Federal Basic Permit and approval of the transfer of stock by the ABC were conditions precedent to the second agreement (resale agreement) between the parties.

(3) That the plaintiff W. H. Hiatt has not done equity entitling him to equitable relief.

(4) That specific performance of the resale agreement would be against public policy.

(5) That the law is with Yergin.

Following the entry of judgment, Hiatt timely filed a Motion to Correct Errors listing some fifty specifications of error.

ISSUES—Of these specifications of error, three issues emerge which have substance:

ISSUE ONE. Should a default judgment have been entered against Yergin?

ISSUE TWO. Did the trial court commit reversible error in its Conclusion of Law that specific performance of the resale agreement would be against public policy?

ISSUE THREE. Was Hiatt entitled to a jury trial?

As to ISSUE ONE, Hiatt argues that Yergin did not meet the extended deadline for filing granted by the court on March 17, 1970, in that the extension was granted only to file a "responsive pleading" and Yergin's Motion to Strike filed on April 3, 1970 is not a responsive pleading. The court therefore erred in failing and refusing to default Yergin after Hiatt had filed a timely Motion for Default Judgment on May 4, 1970.

In response, Yergin contends that there is no authority for the position that after enlargement of time for filing responsive pleadings motions which could have been filed during the initial period cannot be filed within the enlarged period. Yergin also points out that Hiatt did not file an Application for Default until May 4, 1970, and on the same day Yergin filed an Answer in Two Paragraphs. Hiatt waived the question in any event by not waiting for a ruling on the Application for Default and proceeding to file a Reply to the Answer and six days later filing a Demand For a Jury Trial.

As to ISSUE TWO, Hiatt argues that unless a contract adversely affects public welfare, is forbidden by law, or the consideration is illegal or immoral, it should not be declared void as against public policy. The two contracts are not severable, Hiatt says, and if the resale contract is void as against public policy, then the original sales agreement must also fail for the same reason.

Yergin contends no error was raised on this point because of Hiatt's failure to comply with Rule TR. 59 and Rule AP. 8.3.

As to ISSUE THREE, Hiatt asserts that their action is an action at law for breach of contract and for damages and that "the first four rhetorical paragraphs thereof narrate a continuing set of circumstances building up to plaintiffs' damage in the sum of $500,000.00." Merely because "prohibitory and mandatory relief against one of the defendants, Henry Coun-

ty Beverage Company, Incorporated" is sought does not alter or transform his Complaint from an action at law to one of either exclusive equitable jurisdiction or one of mixed law and equitable jurisdiction.

In opposition, Yergin contends that Hiatt asked for specific performance, an accounting, and injunctive relief. Furthermore, the Complaint specifically stated that Hiatt had no adequate remedy at law. He did not specify in his Motion for Jury Trial which issues were to be so tried, and even if the equitable issues were severable, the demand of the Complaint went to all of the issues formed on the pleadings and therefore the trial court could deny same in its discretion.

OTHER ISSUES—The numerous remaining errors raised by Hiatt are either harmless (Rule TR. 61), unsupported by authority, unsubstantial, or waived by failure to comply with Rule TR. 59 and the rules of appellate procedure. In addition, any contention by Hiatt relating to the judgment being contrary to or not supported by the evidence presents no question for this court because Hiatt is appealing from a negative judgment. *Graves* v. *City of Muncie* (1970), 255 Ind. 360, 264 N. E. 2d 607.

Yergin points to various defects in Hiatt's brief. While the defects designated increase the labor in decision making, Hiatt's brief is at least sufficient to present the three issues set forth above. *Willsey* v. *Hartman* (1971), 149 Ind. App. 5, 269 N. E. 2d 172.

## DECISION

ISSUE ONE—A default judgment should not have been entered against Yergin.

In seeking a default judgment against Yergin, Hiatt is immediately confronted with the provisions of Rule TR. 55(A) and (B). The first sentence of Rule TR. 55(A) provides that:

"When a party against whom a judgment for affirmative relief is sought *has failed to plead* or otherwise comply with these rules * * *." (Emphasis supplied).

The pertinent part of subsection (B) of the rule is that:

"If the party against whom judgment by default is sought has appeared in the action, he * * * shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application."

The effect of these two subsections of the rule is that, even if a party has failed to plead or otherwise comply with the rules, no default judgment is proper against such party until an application for a default is filed and at least three days' notice given prior to a hearing on the application for default.

Hiatt fails to take cognizance of these provisions, since he argues that he was entitled to a default judgment for failure of Yergin to file a responsive pleading at a time when no application for a default had been filed. Had he filed such an application of April 3, or immediately thereafter, seeking a default, and had no subsequent responsive pleading been filed by Yergin, a different question might be presented.

A delinquent party only need be nimble enough to plead or otherwise comply with the rules within the three-day period in order to avoid the default question entirely. Yergin wisely filed a responsive pleading on May 4, the very day Hiatt filed the Application for Default Judgment. Thus the question became moot even before a hearing could be held under the three-day notice requirement. In so holding, we do not decide the question as to whether a motion is or is not a responsive pleading, because no question as to the propriety of granting a default judgment can be presented until an application for same is filed.

This interpretation of Rule TR. 55(A) and (B) seems too obvious to require citation of authority.

ISSUE TWO—It was not reversible error for the trial court to state as a Conclusion of Law that specific performance of the resale agreement would be against public policy.

Hiatt correctly argues that a contract will not be declared void as against public policy unless it requires an act which adversely affects the public, is forbidden by law, or involves consideration which is illegal or immoral. He cites respectable authority in support thereof. *Hogston* v. *Bell* (1916), 185 Ind. 536, 112 N. E. 883; *Callicott* v. *Allen* (1903), 31 Ind. App. 561, 67 N. E. 196; *Hodnick* v. *Fidelity Trust Co.* (1932), 96 Ind. App. 342, 183 N. E. 488. We cannot disagree with this statement of Indiana law, but its application is foreign to the issue before us because the Conclusion of Law challenged does *not* state that the resale agreement is void as being against public policy.

Hiatt's argument misconstrues Conclusion number four which states:

"That the specific performance of the resale agreement, being plaintiff's Exhibit #2 [resale agreement] would be against public policy."

His misconstruction is based on the assumption that the trial court concluded that for all purposes the resale agreement is void as being against public policy. As we interpret the court's Conclusion, it is stating that to grant specific performance of the resale agreement as prayer for by Hiatt would be against public policy, because the granting of such relief would necessarily allow Hiatt to reacquire the capital stock of the Henry County Beverage Company, Incorporated, *without* securing a Federal Basic Permit from the IRS and likewise obtaining approval from the ABC. The reacquiring of the stock on this basis without performance of the conditions precedent found by the trial court to exist would partake of illegality, because specific requirements of federal and state law would be violated in the process. The trial court does not imply that the agreement and the resale agreement per se are in any other respect illegal or void as being against public policy.

This reading of the court's Conclusion of Law is consistent

with the court's Special Findings of Fact and the other four Conclusions of Law. Also, it is in keeping with Rule TR. 52(A), which states in part:

> "On appeal of claims tried by the court without a jury * * * at law or in equity, the court on appeal *shall not set aside the findings or judgment unless clearly erroneous, * * *.*" (Emphasis supplied.)

The trial court's Conclusion of Law that specific performance of the resale agreement as prayed for by Hiatt would be against public policy is a reasonable conclusion in view of the Findings of Fact and therefore is not "clearly erroneous."

ISSUE THREE—It is our opinion that the trial court did not err in overruling Hiatt's request for a trial by jury because Rules TR. 38(A) and (C) deny a party a jury trial if the cause is of exclusive equitable jurisdiction; the main theory of this cause is equitable.

Because "[t]he right to jury trial is immemorial * * * and * * * is a fundamental right in our democratic judicial system * * * which is justly dear to the American people, and whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts,"[2] we examine with care, and some tenderness, the questions posed by ISSUE THREE.

In civil litigation part of the continuing strife between the litigants concerns this fundamental right, because the law circumscribes the types of civil actions to which it applies and when it is available. Unfortunately, since the adoption of the present Indiana Rules of Trial Procedure on January 1, 1970, (the Rules), this part of the battleground between the parties is enshrouded with mists, as we shall soon see. Since that time we find no Indiana cases deciding ISSUE THREE as we have defined it.

---

2. 47 Am.Jur.2d *Jury* § 12. By contrast, England permanently eliminated jury trials in civil actions in 1933.

Rules TR. 38 and 39 of the Indiana Rules of Trial Procedure respectively govern JURY TRIAL OF RIGHT and TRIAL BY JURY OR BY THE COURT. Pertinent parts of each provide:

"Trial Rule 38

"JURY TRIAL OF RIGHT

"(A) CAUSES TRIABLE BY COURT AND BY JURY. *Issues of law and issues of fact in causes* that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact *in all other causes* shall be triable as the same are now triable. In case of the *joinder of causes of action* or defenses which, prior to said date, were of exclusive equitable jurisdiction with *causes of action* or defenses which prior to said date were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct.

   \*   \*   \*

"(C) SAME: SPECIFICATION OF ISSUES. In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all *issues* triable as of right by jury. Any other party must file a demand for jury trial to preserve his right to trial by jury.

"(1) of *issues* for which a right to trial by jury was not requested by another party, and

"(2) in case a request by another party was improper; but if a proper request for a trial by jury upon *issues* triable by jury as of right on his behalf is made by any party, such request shall be deemed to have been made on behalf of all parties entitled to a jury trial upon such *issues*." (Emphasis supplied.)

---

"Trial Rule 39

"TRIAL BY JURY OR BY THE COURT

"(A) BY JURY. *When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action.* Issues upon which a

jury trial is so demanded shall be tried by jury, subject to the following exceptions:

"(1)  If the parties or their attorneys of record, by written stipulation filed with the court or by oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury upon any or all *issues* triable by jury as of right and so demanded, the court shall try those *issues* without a jury. The stipulation shall be effective only if filed or made in court before evidence is admitted at the trial or at such later time as the court, in its discretion, may allow.

"(2)  If a party demands a jury trial on any *issue* upon which he is entitled to jury trial as of right in the case, the court shall grant it on that *issue*." (Emphasis supplied.)

The emphasis supplied to the above excerpted portions exhibits to us a semantic cloud hovering over the repeated use of the word "issues" in Rules TR. 38(C) and 39(A)(1) and (2). "Issues" do not exist in a vacuum; they result from factual allegations in civil actions consisting of one or more claims which may or may not be triable by jury because they are "of exclusive equitable jurisdiction." While Rule TR. 38(A) concerns itself with issues in "causes" and "causes of action," subsections (B) and (C) and Rule TR. 39(A)(2) speak only of "issues" which a party may demand be tried by jury. At first blush, it appears that it is "issues" rather than "causes" which determine a party's right to a jury trial. This is not our construction of these Rules.

The terms "cause," "action," "suit," and "proceeding" have been held to be interchangeable. *Ex Parte Milligan* (1866), 71 U.S. 2, 4 Wall. 2, 18 L. Ed. 281.

The term "issue," on the other hand, signifies a disputed fact or question of law contained *within* a cause of action (claim). *Seller* v. *Jenkins* (1884), 97 Ind. 430.

We thus conclude that the quoted portions of Rules TR. 38 and 39 mean that a party's right to trial by jury depends upon

the nature of the claim(s) stated and not upon the issues that may arise within such claim(s). Rule TR. 38(A) governs 38(C) and 39(A)(2).

A short voyage into the past bolsters this interpretation.

The language of subsection (A) of Rule TR. 38 has its historical foundation in Art. 1, § 20, of the Constitution of the State of Indiana, effective in 1852. Art. 1, § 20, of the Constitution says:

"In all civil cases, the right of trial by jury shall remain inviolate."

Our courts have not broadly interpreted this provision. In fact, the usual construction has been that the right of trial by jury refers only to those cases which were so triable at common law. In *Allen* v. *Anderson* (1877), 57 Ind. 388, our Supreme Court interpreted Art. 1, § 20, saying:

"This provision of the constitution was adopted in reference to the common-law right of trial by jury, as the language plainly imports, namely, that the right 'shall *remain* inviolate,' that is, *continue* as it was. The words 'in all civil actions' mean, in all civil actions at the common law * * *. In chancery cases or suits in equity, * * * trial by jury, as a right, did not exist. Issues of fact, in such cases, were sometimes sent to a jury for trial, "to inform the conscience of the chancellor,' as the legal phrase ran; but trial by jury before the chancellor was not a right that either party could demand."

See: *Moore* v. *Boxman* (1969), 144 Ind. App. 252, 245 N. E. 2d 866; *City of Terre Haute* v. *Deckard* (1962), 243 Ind. 289, 183 N. E. 2d 815; *Hayworth* v. *Bromwell* (1959), 239 Ind. 430, 158 N. E. 2d 285. The gist of these cases has been to interpret Art. 1, § 20, as permitting legislation expanding the right to trial by jury in causes where the Constitution does not allow it as a matter of right, but not legislation which withdraws the right to a jury in causes where it existed in 1851 when

the Constitution was adopted. *Lake Erie, Wabash & St. Louis R. R. Co.* v. *Heath* (1857), 9 Ind. 558.

This construction of the constitutional imperative that jury trial of right could not be withheld where it existed prior to 1852, was enacted into law in 1881, where it remained in the following form until 1970:

"2-1204. CAUSES TRIABLE BY COURT AND BY JURY.—Issues of law and issues of fact in causes that, prior to the 18th day of June, 1852, were of exclusive equitable jurisdiction, shall be tried by the court, issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses, which prior to said date were of exclusive equitable jurisdiction, with causes of action or defenses which prior to said date were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct: Provided, That in all cases triable by the court as above directed, the court in its discretion for its information, may cause any question of fact to be tried by a jury, or the court may refer any such cause to a master commissioner for hearing and report." (Herein referred to as the 1881 Statute.)

Except for the proviso portion following the word "direct," the remainder of the 1881 Statute is identical to Rule TR. 38(A).

When interpreting the 1881 Statute, our courts have had little difficulty in determining when a party is entitled to a jury trial as a matter of right, if the cause was either exclusively equitable or exclusively legal, or even if there was a joinder of equitable causes of action with legal causes of action. *Reichert* v. *Krass* (1895), 13 Ind. App. 348, 40 N. E. 706 (foreclosure of a mechanic's lien and matters contained in a counterclaim for damages on breach of contract found to be an exclusively equitable proceeding) ; *Field* v. *Brown* (1896), 146 Ind. 293, 45 N. E. 464 (paragraph based on money had and received determined to be exclusively legal and triable by

jury, while other paragraphs seeking accounting and rescission based on fraud were determined to be exclusively equitable causes of action triable only by the court) ; *Towns* v. *Smith* (1888), 115 Ind. 480, 16 N. E. 811 (creditor's bill to set aside and cancel a fraudulent conveyance with additional relief seeking to recover a personal judgment on a promissory note deemed an exclusively equitable action) ; *Carmichael* v. *Adams* (1883), 91 Ind. 526 (action to recover on a note and to foreclose a mortgage securing the note deemed an exclusively equitable cause of action) ; *Fish* v. *Prudential Ins. Co.* (1947), 225 Ind. 448, 75 N. E. 2d 57 (action to rescind and cancel a life insurance policy with a cross-complaint for full recovery on the policy found to be an essentially equitable cause of action).

In merging verbatim all but the proviso portion of the 1881 Statute into Rule TR. 38 (A), a marriage of convenience was effected with the new additions [38(C) and 39(A) (1) and (2)]. The "old" brought with it in this union, as was intended, a dowry of precedents interpreting its provisions. In so doing, however, it caused other vapors to emanate from the battleground for right to trial by jury.

Before this union, stricter rules of pleading *required* more specific statement of separate causes of action. *Cleveland, etc., R. Co.* v. *Oesterling* (1914), 182 Ind. 481, 103 N. E. 401; *Field* v. *Brown, supra.* With the advent of what is often referred to as "notice pleading," a claim for relief need only contain a short, plain statement of the claim showing that the pleader is entitled to relief, and a demand for such relief. See: Rule TR. 8 (A) ; *Farm Bureau Insurance Co.* v. *Clinton* (1971), 149 Ind. App. 36, 269 N. E. 2d 780; *McCarthy* v. *McCarthy* (1971), 150 Ind. App. 640, 276 N. E. 2d 891. As a result, ascertainment of the theory of a complaint or other pleading to determine if the right to a jury trial exists is hampered. Particularly where little or no discovery has been availed of by the parties, the effect of modern pleading may often be to obscure the theory of a pleading when a jury trial is demanded. At least for the

purpose of demanding a jury trial, a pleader should bear in mind the traditional distinction between law and equity. We say this recognizing that the pleadings no longer necessarily serve the function of formulating the issues, having in large part been replaced by discovery procedure.

We now turn to the Indiana precedents specifically determining the right to jury trial in causes where one or more of the issues of fact are of exclusive equitable jurisdiction and others are not. The cases are confusing. However, the tendency to deny jury trial in these circumstances is a common thread that runs through most of them.

Typical is *Towns* v. *Smith, supra,* where the court announced as early as 1888 that *"if any essential part of a cause* is exclusively of equitable cognizance, the *whole* is drawn into equity"* (emphasis supplied) and tried without a jury. *Jones Drilling Corporation* v. *Rotman* (1964), 245 Ind. 10, 195 N. E. 2d 857; *Field* v. *Brown, supra; Hendricks* v. *Frank* (1882), 86 Ind. 278; *Lake* v. *Lake* (1884), 99 Ind. 339; *Quarl* v. *Abbett* (1885), 102 Ind. 233, 1 N. E. 476; *Watson* v. *Watson* (1952), 231 Ind. 385, 108 N. E. 2d 893; *Gilot* v. *Walsh* (1968), 142 Ind. App. 628, 236 N. E. 2d 607.

In further support of the proposition that the whole is drawn into equity when any essential part of a cause is exclusively equitable, is this language in *Carmichael* v. *Adams, supra:*

> *The court, having acquired jurisdiction of * * * a suit in equity * * * was not bound to dissect the suit into separate members,* and try each separately, one member as a matter of law, and the other as a matter of equity, but had a right to *treat the case as a unity,* and as one of exclusive equitable jurisdiction.
>
> * * *
>
> "Where questions are so closely blended and so firmly interlaced * * *, there can be no severance and no separate trials. One trial, or, to speak more accurately, one hearing, ends the whole controversy.

"It would lead to confusion and injustice to direct separate trials in such cases. Should a jury find there was no right to recover on the [legal cause of action], and the court adjudge that there was a right to recover on the [equitable cause of action], there would then be a conflict not easily overcome. To be sure, the court might set aside the verdict and grant a new rtial, but this, after all, would leave the control with the court, and it might just as well be there in the first instance." (Emphasis supplied.)

See: *Jones Drilling Corporation* v. *Rotman, supra.* As a result, "[w]hen equity has taken jurisdiction of an equitable cause it will not be ousted of that jurisdiction by reason of the fact that subsequent legal proceedings are instituted concerning the same controversy." *Fish* v. *Prudential Ins. Co. of America, supra.*

To determine if an action with mixed issues of fact sounds in equity or law, the court must turn to the complaint and pleadings as a whole. In *Monnet* v. *Turpie* (1892), 132 Ind. 482, 32 N. E. 328, it was held that:

"*The nature of the action* must be determined from the general character and scope of the pleading, *disregarding isolated and detached allegations not essential to the support of its main theory. First National Bank, etc.,* v. *Root,* 107 Ind. 224; *Cottrell* v. *Aetna L. Ins. Co.,* 97 Ind. 311; *Bingham* v. *Stage,* 123 Ind. 281; *City of Ft. Wayne* v. *Hamilton,* post, p. 487.

"The court will construe the pleadings as proceeding upon the theory which is most apparent and most clearly outlined by the facts stated." (Emphasis supplied.)

See also: *State* v. *Bridwell* (1960), 241 Ind. 135, 170 N. E. 2d 233.

Thus, the theory of a cause is determined from the general scope and tenor of the pleadings. *Burk* v. *Brown* (1915), 58 Ind. App. 410, 108 N. E. 252; *Oliver* v. *Clemons' Estate* (1968), 142 Ind. App. 499, 236 N. E. 2d 72.

Likewise, when interpreting the 1881 Statute, our Supreme Court, in *Hendricks* v. *Frank, supra,* said that:

"The manifest purpose of the above statute is to dispense with a jury in the trial of *issues in causes* which, before the adoption of the code, were triable by the court as a court of equity. To determine whether a court of equity would have had exclusive jurisdiction of the cause in hearing before the adoption of the code of 1852, we must look to the complaint, the rights and interests involved, and the relief demanded." (Emphasis supplied.)

Rule TR. 38(A) brought with it the body of case law construing the 1881 Statute which should be and can be preserved consistent with modern pleading and procedure and in the furtherance of stare decisis.

At this stage of our consideration of the 1881 Statute (which except as otherwise indicated was incorporated verbatim into Rule TR. 38(A)), caution prompts us to take heed of the vestigial retention of the words "causes of action" in Rule 38(A). So that no confusion will be engendered as to the meaning of this term in rules of trial procedure which elsewhere carefully eliminated this concept in favor of the less technical concept of a *claim* for relief,[3] we eliminate this ominous specter by specifically stating that we interpret the intent of the framers of the rule to be that "causes of action" means claim(s) for relief. This interpretation is consistent with the tenor of The Rules.

Having done so, we have not solved the aggravating problem of applying an ancient determinant of jury trial to modern rules of practice and procedure. Right to jury trial was easily ascertainable in a bygone day of two separate court systems, sovereign writs, and rigid forms of action. Today we struggle with an anachronism and are victimized by history.

---

3. See Rules TR. 8, 10, 12 and 13. *Farm Bureau Insurance Company* v. *Clinton, supra,* quotes from *Kisella* v. *Dunn,* 58 N.M. 695, 275 P.2d 181, in this manner:

" 'The pleading still must state a "cause of action" in the sense that it must show "that the pleader is entitled to relief"; it is not enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.' 2 Moore's Federal Practice (2d ed. 1938), paragraph 8.13, p. 1653."

Even so handicapped we can apply the ancient yardstick. In so doing, we note that The Rules as now constituted contemplate notice pleading and therefore in many cases right to jury trial may only be determined from an examination of the totality of the action pending between the parties. Differently stated, since the burden of making up the issues is no longer the sole function of the pleadings, the court in addition may be required to turn to the "deposition and discovery procedure."[4] It seems to us a logical extension of the spirit of the rules and the cases construing the 1881 Statute to conclude that when a jury trial is requested where the pleadings are of the notice variety, the trial court must necessarily turn to the totality of the proceedings before it to ascertain whether the claim of the party seeking a jury trial is essentially equitable or legal in nature. However, the state of the record before us is such that we need not reach this conclusion in order to decide this case. There is no indication of any depositions or discovery inconsistent with or contrary to the allegations of Hiatt's Complaint and the Answer in denial.

TR. 16(A)(1) provides an excellent opportunity for the trial court to aid in formulating and simplifying the issues by requiring the attorneys to participate in a pretrial conference for this purpose. Such a conference should be frequently used because it is often the only effective way of applying "the ancient yardstick."

We think the foregoing exposition of Indiana law and our commentary on the historical dilemma point the way to a solution of whether Hiatt is entitled to a jury trial in this

---

4. "Under the old practice, the pleadings not only served the function of giving notice of the claim asserted, but they also created the burden of formulating the issues and to a large extent of advising the adverse party of the facts involved. Now the deposition and discovery procedure are Rules 26-37 and the pretrial conference under Rule 16 affords a much more effective method of getting at the facts than pleadings ever offered, and they also bear much of the burden of making up the issues, so that the only real office that the pleadings continue to serve is that of giving notice." (2A Moore, Federal Practice § 8.13, at 1703-4 (2d ed. 1969).)

case. Before doing so, we must scatter one more cloud, a federal one this time.

The repetitious use of the word "issues" in Rule TR. 38(C) and Rule TR. 39(A) (2) lends credence to holdings of the United States Supreme Court to the effect that the existence of an issue, not of equitable jurisdiction, even though incidental, in a cause that is otherwise equitable in character requires a jury trial of such issue and, further, that the legal issue must be tried first. *Beacon Theatres, Inc.* v. *Westover* (1959), 359 U.S. 500, 3 L. Ed. 2d 988, 79 S. Ct. 948; *Dairy Queen, Inc.* v. *Wood* (1962), 369 U.S. 469, 8 L. Ed. 2d 49, 82 S. Ct. 849. When these cases were decided, the Federal Rules of Civil Procedure contained provisions substantially similar to our Rules TR. 38(C) and 39(A) (2).

In *Dairy Queen* v. *Wood, supra,* Mr. Justice Black stated that even though "equitable issues" clearly outweigh "legal issues" so that the tenor of the case is equitable, as long as there is an "incidental" issue for which a trial by jury has been demanded, this issue is severable and must be submitted to the jury.

Thus, the holdings of *Dairy Queen* and *Beacon* are diametrically opposed to Indiana decisions. This is readily apparent by comparing Rules TR. 38(C) and 39(A) (2) and Fed. R. Civ. P. 38(c) and 39(a):

Rule Tr. 38(C):

> "In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all issues triable as of right by jury.* * *"

Fed. R. Civ. P. 38(c):

> "In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all issues so triable. * * *"

Rule TR. 39 (A) (2) :

"If a party demands a jury trial on any issue upon which he is entitled to jury trial as of right in the case, the court shall grant it on that issue."

Fed. R. Civ. P. 39 (a) :

"When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, * * *."

While these federal cases, construing almost identical procedural rules, have the allure of conceptual simplicity, we resist their application in Indiana for several reasons.

*First.* While it is true that Indiana courts will, when appropriate, look to the federal rules decisions for guidance when interpreting the Indiana counterpart of a federal rule of procedure, *Galbreath* v. *City of Logansport* (1972), 151 Ind. App. 291, 279 N. E. 2d 578, *Farm Bureau Insurance Co.* v. *Clinton* (1971), 149 Ind. App. 36, 269 N. E. 2d 780, adherence to the federal rules decisions is not required, no matter how similar, as they are not applicable to practice in state courts. *Rader* v. *Baltimore & Ohio R. R. Co.* (9th Cir. 1940), 108 F. 2d 980. The value of reference to the federal rules decisions for guidance is to do so when the Indiana Rules lack sufficient Indiana case law foundation or interpretation. As above indicated, TR. 38 (A), which governs 38 (C) and 39 (A) (2), has a substantial Indiana case law foundation worthy of preservation, and our natural course is to give vitality to these cases within the framework of The Rules.

*Second.* Fed. R. Civ. P. 38 and 39 derive their authority from the Seventh Amendment of the United States Constitution, while Rules TR. 38 and 39 derive their authority from Art. 1, § 20, of the Indiana State Constitution. A comparison of the Seventh Amendment of the United States Constitution to Art. 1, § 20, of the Indiana Con-

stitution seems to indicate that both intended to preserve the right to trial by jury in civil matters. The Seventh Amendment to the United States Constitution, however, does not apply to civil trials in state courts. *Hayworth* v. *Bromwell* (1959), 239 Ind. 430, 158 N. E. 2d 285; *Spies* v. *Illinois* (1887), 123 U.S. 131, 31 L. Ed. 80, 8 S. Ct. 21; and this is so even though the actions are founded upon acts of Congress. *Louisville & N. R. Co.* v. *Stuart* (1915), 241 U.S. 261, 60 L. Ed. 989, 36 S. Ct. 586; *Chesapeake & O. R. Co.* v. *Gainey* (1915), 241 U.S. 494, 60 L. Ed. 1124, 36 S. Ct. 633.

The rationale for restricting application of the Seventh Amendment of the United States Constitution to federal courts only is best explained in 5 Moore's Federal Practice 77-78:

> "Since the first ten Amendments comprising the Bill of Rights are not concerned with state action and deal only with federal action, the Seventh Amendment which deals with one aspect of federal action, to-wit, the mode of exercising federal judicial power in common law actions, applies only to the courts of the United States. The Seventh Amendment does not operate as a limitation upon the power of Congress to confer concurrent jurisdiction upon state courts of federal matters; * * *."

A *third* reason not to adopt the holdings in *Beacon Theatres, Inc.* v. *Westover, supra,* and *Dairy Queen, Inc.* v. *Wood, supra,* is founded in textual differences between Rule TR. 38(A) and Fed. R. Civ. P. 38(a):

Rule TR. 38(a):

> "(A) CAUSES TRIABLE BY COURT AND BY JURY. Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which prior to said date were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct."

Fed. R. Civ. P. 38(a):

"(a) RIGHT PRESERVED. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."

Fed. R. Civ. P. 38(a) is not restricted by a reference to trial by jury of issues of fact in causes which were not of equitable jurisdiction prior to June 18, 1852.

As the Seventh Amendment to the United States Constitution applies only to civil trials in federal courts, the states are free to develop their own body of law concerning the right to trial by jury in civil matters.

The dissent in *Beacon Theatres* v. *Westover, supra,* provides a *fourth* reason why we should reject the majority holding that as long as there is any incidental issue of fact not equitable in character for which a jury trial has been demanded, it must be submitted to the jury. The three dissenters potently argued that to adopt the majority view was to "undermine the basic structure of equity jurisprudence, developed over the centuries." They also observed that:

"Issues of fact are rarely either 'legal' or 'equitable.' All depends upon the context in which they arise . . . examples are . . . [I]n a suit by one in possession of real property to quiet title, or to remove a cloud on title, the court of equity may determine the legal title. In a suit for specific performance of a contract, the court may determine the making, validity and the terms of the contract involved . . ."

The conclusion of the minority that the Federal rules were not intended to undermine the basic structure of equity jurisprudence applies with equal force to TR. 38(A) and (C) of our rules.

The same dissent quotes Mr. Justice Cardozo to suggest a *fifth* reason for rejecting the holding in *Beacon Theatres* v. *Westover, supra.* The essence of the quote is that a court must have control over its own docket and the trial of cases and

the order in which they are tried. This is in accordance with Federal rule 42(B) (which is almost identical with our Rule TR. 42(B)) and Rule TR. 38(A), which allow the trial court in the interest of "expedition and economy" to order separate trials of claims, cross claims, and issues of fact in causes that are of exclusive equitable jurisdiction—and may determine the order and time of trial(s).

The dissenters expressed the prophetic fear that to adopt the majority approach results in clogging of court calendars with frivolous or dilatory demands for jury trials and leads to administrative impasse. Rules of procedure should not oust equity of "Jurisprudence developed over the centuries and explicitly recognized in the U. S. Constitution . . . The court today sweeps away these basic principles . . ."

Hardly an inviting approach for Indiana to adopt.

Despite the somewhat misleading references in Rule TR. 38(C) to "issues" and the dichotomy resulting from combining Rule TR. 38(A) (the 1881 Statute) with the remainder of Rule TR. 38 and Rule TR. 39 and the liberalized rules of pleading, we see no reason to overturn many years of historical precedent, which would in effect destroy the meaning of Rule TR. 38(A) and its supporting authority.

Having harmonized Rule TR. 38(A) (the 1881 Statute) and Rule TR. 38(C) so that right to trial by jury is determined by reference to the essential character and nature of the claim for relief sought, and having further established the non-applicability of federal cases interpreting an almost identical Rule TR. 38(C), we turn to Hiatt's one paragraph Complaint to see if he was improperly denied a jury trial.

An overview of the pleadings indicates a blending of issues of fact predominately of equitable jurisdiction with others not of such character so that the cause is in the nature of a bill in equity.

The choice of the pleader was to plead breach of contract

and out of that same transaction or set of circumstances, allege substantive facts the primary object of which was equitable relief. The main theory outlined by the facts pleaded is not for damages, but for specific performance of the agreement(s) between Hiatt and Yergin with an attendant accounting and an injunction as to the manner of the future operation of the Henry County Beverage Company, Incorporated, including a prohibition on the distribution of wages, salaries or profits. Specific performance, accounting and injunction are all matters of equity. *Helm* v. *First National Bank* (1883), 91 Ind. 44; *Lupton* v. *Horn* (1923), 193 Ind. 499, 139 N. E. 177; *Hopkins* v. *Greensburg, etc., Turnpike Co.* (1874), 46 Ind. 187; *Monnett* v. *Turpie, supra.* In context, the issues of fact framed by the complaint and denials thereto were essentially equitable in character and therefore this cause is of "exclusive equitable jurisdiction."

Furthermore, it could hardly be denied that an essential part of Hiatt's claim is equitable and therefore the whole is drawn into equity. *Towns* v. *Smith, supra.* We draw this conclusion in full recognition of the principle that the nature of a claim of "cause of action" stated in a complaint is determined by the complaint as a whole, and not merely by the relief sought. *Burk* v. *Brown, supra.* Hiatt's Complaint seeks mostly equitable relief. While the amount of damages sought, *i.e.,* $500,000.00, is not inconsequential, the recovery of damages appears to be incidental to the main theory of the action. We note that Hiatt's last allegation is that the "Plaintiffs [Hiatt] are without an adequate remedy at law."

In addition to the historical cases cited above in support of this conclusion, see also: *Moore* v. *Boxman, supra; City of Terra Haute* v. *Deckard, supra; Hayworth* v. *Bromwell, supra; Jones Drilling Corporation* v. *Rotman, supra: Gilot* v. *Walsh, supra; Watson* v. *Watson, supra; Oliver* v. *Clemons' Estate, supra;* and *State* v. *Bridwell, supra.*

Having reached this decision we need not speculate as to

what our decision might have been had the issues not been framed by the pleadings nor do we reach the question of whether Hiatt's general request for a jury trial was defective.

The decision of the trial court is therefore affirmed.

Sullivan, J., concurs; White, P.J., concurs with opinion.

## CONCURRING OPINION

WHITE, J.—I concur in the majority's statement of reasons for affirming as to Issues One and Two, but cannot give my unqualified endorsement to all that is said as to Issue Three, though I have no quarrel with the result.

In Indiana "prior to the 18th day of June, 1852" (the effective date of the Constitution of Indiana, hereafter merely "1852") the vendee of real estate or other unique property (such as shares in a corporation) whose vendor refused to convey could apply to a court of equity for a decree of specific performance or to a court of law for a money judgment for damages for breach of contract. If he tried first in equity for specific performance but failed for some reason other than that his contract with his vendor was invalid, he could then apply to a court of law for damages for the breach of that contract. *Modisett* v. *Johnson* (1831), 2 Blkf. 431, 440.

In that 1831 case the Indiana Supreme Court reversed a decree of specific performance saying:

" . . . [A] Court of equity must be satisfied that the claim is fair, just and reasonable, the contract equal in all its parts, and founded on an adequate consideration, before it will decree performance. If there be any objection on these points that is well grounded, *the party will be left to his remedy at law.* [My emphasis.] *Seymour* v. *Delancey et al.,* 6 Johns. C. Rep. 222. . . ."

In *Ikerd* v. *Beavers* (1886), 106 Ind. 483, 486, 7 N. E. 326, 327, denial of specific performance was approved. *Modisett* v. *Johnson, supra,* was cited followed by the comment: "Parties in such cases should be remitted to their rights at law."

Further on, the court said: "That an adequate remedy is available to them, affords an additional reason why a court of equity will refuse to enforce the contract."

In *Sternberger* v. *McGovern* (1874), 56 N. Y. 12, 20, the Court of Appeals of New York, after approving a denial of specific performance stated:

"The remaining question is, whether the General Term ought not to have ordered a new trial instead of giving final judgment dismissing the complaint. It appears from the opinions that the latter course was adopted, for the reason that it appeared, upon the trial, that the plaintiffs were aware, at the time of the commencement of the action, that the defendant could not perform the contract, and that in such a case equity would not retain the suit for the purpose of awarding damages which could be recovered in an action at law. This was the rule prior to the adoption of the Code. *Morss* v. *Elmendorf*, 11 Paige, 277. But the Code authorizes the uniting of causes of action, both legal and equitable, arising out of the same transaction in the complaint. *Bradley* v. *Aldrich*, 40 N. Y.* 504, 512; 100 Am. Dec. 528. The facts constituting these causes of action must be stated in the complaint. The court held in that case that no facts constituting a legal cause of action were stated in the complaint, and that as the plaintiff failed to prove the equitable cause of action stated, the complaint was properly dismissed. This shows that when the complaint states facts giving an equitable cause of action and also a legal cause of action, arising out of the same transaction, the party is entitled to have both tried, if necessary to obtain his rights. That is this case. The complaint sets out the contract and alleges a tender of performance by the plaintiff and a breach by the defendant, and demands judgment for $125,000 and other relief. True, he demands equitable relief, based upon the ground that he was entitled to a specific performance of that part of the contract relating to the Thompson street property. He failed in showing a right to this. He then had a right to a trial of his claim for damages sustained by the breach. True, the mode of trial may be different. The former must be tried by a court or a referee, unless some question or questions of fact involved are ordered by the court to be tried by jury. Either party has the right to a jury trial of the latter. This creates no practical difficulty. The one issue may be tried by the court and the

other by jury if the ends of justice require the trial of both, or both may be tried by the court or a referee if the parties so desire."

The holding in *Beck* v. *Allison* (1874), 56 N. Y. 366, 372, was the same with the court noting that:

"It was only where the plaintiff was entitled to equitable relief upon the case made by him, but which could not be awarded, for the reason that it was not in the power of the defendant to perform the judgment granting it, or that such relief would be harsh and inequitable under all the circumstances of the case, that the court, as a substitute therefor, awarded an equivalent in damages, thus ending the controversy, instead of sending the parties to a court of law for that purpose."

The simple point is that specific performance of a contract and damages for its breach were not, prior to 1852, obtainable in the same action. Specific performance was obtainable only in a "cause that . . . [was] of exclusive equitable jurisdiction . . . [and was] tried by the court . . ." while damages were obtainable only in "actions at law" in which "issues of fact" (if any) were triable by jury.[1] Thus when, under code pleading or under notice pleading, we have a demand both for specific performance of a contract and a demand for damages for breach of that same contract, we may well (though not necessarily) have a "case of the joinder of causes of action . . . which, prior to said date, were of exclusive equitable jurisdiction with causes of action on defenses which prior to said date were designated as actions at law and triable by jury. . . ." If there be that joinder, then by the provisions of Trial Rule 38(A) (from which I have just quoted and now again quote), "the former shall be triable by the court and the latter by jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct."

---

1. Quotation marks are used to indicate a paraphrasing of the first sentence of Trial Rule 38(A), "Cases triable by court and by jury."

That a suit for specific performance was an equitable proceeding in which damages ordinarily could not be recovered was clearly recognized by our predecessor, the Appellate Court of Indiana, in *Fox* v. *Wallace* (1926), 88 Ind. App. 235, 151 N. E. 835. In that case the vendor's wife had not joined in the contract he made to convey their entireties' real estate. For that reason the trial judge denied a decree for specific performance but rendered judgment for damages. That judgment was reversed on the premise "that the judgment rendered by the court should be in conformity with the issues presented by the pleadings and the evidence" and that the judgment appealed lacked that conformity because "[T]he theory of the complaint is not for breach of contract . . . [but] for specific performance; and, on that theory, the cause was tried."[2]

The case of *Pirchio* v. *Noecker* (1948), 226 Ind. 622, 82 N. E. 2d 838, 7 A. L. R. 2d 1198, in which the trial court decreed specific performance to defendant vendees on their counterclaim *and* awarded them a judgment of $1,000.00 for damages (the latter being reversed), probably has little relevance to the questions before us in the case at bar, but the annotation which follows it in 7 A. L. R. 2d at 1204 is highly relevant. The annotator distils these principles from the cases he cites and discusses:

"§ 1. Introduction: general principles.
This annotation concerns the equitable right of the vendee, in a suit for specific performance of a contract for the sale or exchange of realty, to compensation for the delay in receiving title.

---

2. The case of *Fox* v. *Wallace, supra,* did not involve a two-paragraph, two-theory, complaint, nor did it, therefore, involve any question of whether either party would have been entitled to a jury. The opinion did, however, cite (with apparent approval) the two New York cases from which I have previously quoted. However, the Appellate Court seems to have overlooked the exception quoted *ante,* p. 851, from *Beck* v. *Allison,* one of those New York cases, perhaps because of its devotion to the discredited doctrine that a plaintiff could recover, if at all, only on the theory of his complaint. See *Morrison's, etc.* v. *Southern Plaza, Inc.* (1969), 252 Ind. 109, 121, 246 N. E. 2d 191, 199, 17 Ind. Dec. 166, 176.

"The proposition relevant to this annotation is often stated loosely as being that a court, in granting specific performance, will also award damages for the defendant's breach of contract. This is not an accurate statement of the principle on which the court acts. It is not accurate for two reasons, (1) because the court will often award the same compensation when blame for the delay cannot be attributed to either party, and even when the decree is granted at the behest of one who is technically but not reprehensibly at fault; (2) because what the court awards cannot properly be called damages for breach of contract. This later fact is to be borne in mind in any circumspect approach to the subject. The conflicting view which seems to have been taken in Indiana by the decision in Pirchio v. Noecker (1948), 226 Ind. 622, 82 N. E. 2d 838, 7 ALR2d 1198, is not in accord with the prevailing doctrine.

"The compensation awarded as incident to a decree for specific performance is not for breach of contract and is therefore not legal damages. The complainant affirms the contract as being still in force and asks that it be performed. He cannot have it both ways, performed and broken. The situation is simply that, if the court orders it to be performed, the decree must as nearly as possible order it to be performed according to its terms, and one of those terms is the date fixed by it for its completion. This date having passed, the court, in order to relate the performance back to it, equalizes any losses occasioned by the delay by offsetting them with money payments. Often the result is more like an accounting between the parties than like an assessment of damages.

" 'The vendee is not due specific performance and also damages for its breach.' Pearce v. Third Ave. Improv. Co. (1930), 221 Ala 209, 128 So 396.

" 'But equity will not adjust matters upon the basis that the contract is broken, and that plaintiff is entitled to damages for the breach. He cannot have both damages for the breach of contract and a specific performance of it. It is not the breach of the contract, but the contract itself that gives the right to an action for specific performance.' Smith v. Gibson (1870), 15 Minn 89, Gil 66.

\* \* \*

"§ 2. Purchaser's claim to legal damages as for breach of contract.

It follows from the theory of the remedy by decree of specific performance that damages as at law for breach of contract by the vendor, in not conveying the property at

the time fixed by the contract, are not recoverable by the purchaser as supplementary to the decree. The contract is being performed, not broken.

"The view that legal damages for breach of contract are not recoverable as ancillary to a decree for specific performance, because inconsistent with the retrospective erasure of the breach, is implied in the uniform practice in such cases, and is held in the following decisions:

"It was expressly held in Schiavone v. Ashton (1933), 269 Ill App 386, that ordinary decline in value during the delay in making conveyance, either through a difference in market value or through ordinary wear and tear, is not a subject for the allowance of damages to a purchaser in an equity suit by him for specific performance.

" 'In adjudging specific performance, provisions should be made to compensate the plaintiff for the loss he has sustained by the delays. In estimating this, it will not be proper to consider the depreciation in the value of the lands; but only the value of their use during the period that they have been kept from him.' Benson v. Tilton (1863, NY), 24 How Pr 494, aff'd without op 41 NY 619.

"And where a trial court, upon awarding specific performance, ordered the usual accounting between the parties, but declared that the plaintiff was entitled also to damages for the breach, the decree was held erroneous in the latter respect, because when the accounts were equalized there would be no ground for such damages. Ragette v. Zimmer (1904), 98 App Div 619, 90 NYS 221. The nature of the damages claimed is not shown."

In *Doctor* v. *Reiss* (1917), 180 App. Div. 62, 167 N. Y. Supp. 193, the buyer sued for specific performance of a contract to sell all the shares of stock of a construction corporation which contract also included an agreement "that a third party would advance $25,000.00 as a building loan". No demand was made for a money judgment. The court said:

"It appearing that the third party had refused, and continued to refuse, to make the loan of $25,000, obviously there could be no decree for specific performance. This was known to the plaintiff before the action was begun. Plaintiff claims that, notwithstanding, if he could establish that the refusal of the third party to make the loan was due to the acts of the defendants, plaintiff was entitled to a money judgment.

"Defendants had the right to a jury trial, if the action was for damages for breach of contract. . . . [T]he court should not have dismissed the complaint, for it contained all the facts necessary to establish a cause of action at law. The mere absence of the demand for damages, where the complaint states facts from which damages would naturally flow, and also alleges the fact of damage, does not render the statement of a cause of action insufficient. In such a case as this, where the complaint contains all the facts necessary in an action at law, the proper practice is not to dismiss the complaint, but to send the case to the jury calendar for trial. Sternberger v. McGovern, 56 N.Y. 12; Levy v. Knepper, 117 App. Div. 163, 102 N.Y. Supp. 313."

Plaintiffs-appellants assert that their "complaint is an action at law for breach of contract; the first four rhetorical paragraphs thereof narrate a continuing set of circumstances building up to plaintiffs' damage in the sum of $500,000, which loss to plaintiffs is specifically alleged as rhetorical paragraph 4 of said complaint . . . ."[3] Plaintiffs fail, however, to set out their complaint, or paragraph 4, or the substance of either, in their brief. Nor are we told whether there is any evidence, or offer of proof, in the record disclosing any issues of fact appropriate for trial by jury.

Appellees' brief quite aptly points out that "[T]here is no showing by appellants that the 'damages' which they requested in their prayer for relief in addition to specific performance is anything other than what they contend is due to them in respect to the *accounting* which they also seek."[4] (Appellee's emphasis.)

Since the majority opinion quite obligingly quotes the complaint *verbatim* in its footnote one, I repeat here rhetorical paragraph 4 thereof, as follows:

"4. Defendant, Yergins, to the injury of plaintiffs further continuously since November 30, 1968, assume 50%

---

3. Appellants' Brief, p. 66.

4. Appellees' Brief, p. 14. Appellants' reply brief made no attempt to deny, answer, or avoid this argument.

· ownership of defendant Henry County Beverage Company, Incorporated, equal representation upon its Board of Directors with the other 50% shareholders, ownership and entitlement to 50% of its corporate assets, earnings, surplus profits and dividends of not less than $50,000.00 annually, and certain salaries therefrom, all of which are the property of and jointly due plaintiffs to plaintiffs damage in the sum of $500,000.00 in addition to the 500 shares of said capital stock of defendant, Henry County Beverage Company, Incorporated, wrongfully withheld by defendants, Yergins, from plaintiffs."

Those allegations suggest to me that the so-called "damages" which are there asserted (and later demanded in the prayer) are merely losses incident to the delay in reconveying the stock. The implication is that Yergins have profited ("to the injury of plaintiffs") by using plaintiffs' stock. This conclusion is fortified by the allegation of rhetorical paragraph 7 that "[P]laintiffs are without an adequate remedy at law". Quoting once again (see *ante,* p. 530) from the annotation in 7 A. L. R. 2d at p. 1208:

> " 'In adjudging specific performance, provision should be made to compensate the plaintiff for the loss he has sustained by the delays. In estimating this, it will not be proper to consider the depreciation in the value of the lands; but only the value of their use during the period that they have been kept from him.' Benson v. Tilton (1863, NY), 24 How Pr 494, aff'd without op 41 NY 619."

In thus looking to the complaint I am not suggesting that a final determination of the right of either party to a jury trial of all or part of the issues can be made by examining the allegations of the pleadings. Neither can it be made from an examination of the " 'deposition and discovery procedure' ",[5] an examination of the totality of the action,[6] or by any other pre-trial procedure or process. The suggestion that

5. Majority opinion, *ante,* p. 520.
6. Majority opinion, *ante,* p. 520.

the pre-trial conference can be useful is well taken, but may not always prove infallible.

It is my notion that, although a general jury demand preserves the right as to all issues triable by jury, good practice dictates that in those cases where there are obviously many issues not triable by jury as of right, the party requesting the jury should make some attempt to assist the court in recognizing what part of the action is triable by jury as of right. But I see no real necessity for the court to know, before he tries the equity case without a jury, whether there is also combined with it a law case triable as of right by a jury. No legal reason comes to mind which would require the judge to decide, before he commences a court trial, whether a jury trial should also be held. All he then needs to decide is that a court trial of at least some issues of fact in the case is constitutionally permissible.[7]

So far as the record in this case discloses, that may well be exactly what the trial court decided, and all he decided, when he sustained defendants' objections to trial by jury and proceeded to hear the case without a jury. At any rate, he did decide that plaintiffs should have a trial on their claim that they were entitled to specific performance of the contract. Plaintiffs were given a trial of that claim by the only trier of fact to which any seeker of an equitable remedy has ever been entitled as of right. At the conclusion of that trial all the court expressly decided was that plaintiffs were not entitled to specific performance. Plaintiffs have no basis to complain that a jury was not called to decide the facts incident to that trial.[8]

---

7. There may, of course, be practical reasons, such as avoiding the possibility of calling the same witnesses twice, for trying both the court case and the jury case at the same time. There may also be countervailing practicalities, such as an apparent probability that the jury may never have an issue of fact to resolve.

8. When plaintiffs demanded specific performance they demanded a remedy which only a court of equity (prior to 1852) had power to grant. "[T]here is no power in a court of law to compel specific performance of any kind of a contract." *Acme Food Co.* v. *Older* (1908), 64 W.Va.

After that trial and the decision that plaintiffs were not entitled to equitable relief, the only question remaining undecided was whether there should be a further trial to determine whether plaintiffs should recover damages for breach of the contract which they could not force defendants to perform. At that trial (if one were to be held) plaintiffs would be entitled to a jury because damages were not awarded (prior to 1852) by courts of equity for breaches of contracts they found *not* to be specifically enforceable. *Modisett* v. *Johnson, supra,* (2 Blkf. at 440). The money judgments which courts of equity sometimes awarded as incidental to their decrees of specific performance were *not damages* for breach of the contract. The equity court, in decreeing specific performance *as of the date it should have been performed,* "equalizes any losses occasioned by the delay [in performance] by offsetting them with money payments . . . [which is] more like an accounting between the parties than like an assessment of damages". Anno. 7 A. L. R. 2d 1204, 1206 (quoted *ante,* p. 531.)

If plaintiffs' demand for damages was merely a request for a money judgment to equalize the losses occasioned by the delay and to make the specific performance relate back to the date the contract should have been performed, then the trial court's denial of specific performance was necessarily a denial of this incidental equalizing relief,[9] and the judg-

---

255, 61 S.E. 235, 17 L.R.A. (N.S.) 807, 819. "[T]he suit on the note can only be maintained, if at all, as being in equity to compel a specific performance. . . ." *O'Kane* v. *Kiser* (1865), 25 Ind. 168, 169. See also *Guraly* v. *Tenta* (1956), 126 Ind. App. 527, 132 N.E. 2d 725; *Parks* v. *Koser* (1955), 125 Ind. App. 585, 126 N.E. 2d 785; *Marion Trucking Co.* v. *Harwood Trucking* (1954), 125 Ind. App. 1, 116 N.E. 2d 636; *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N.E. 877.

This is not to say, of course, that merely because the prayer of plaintiffs' complaint included a request for specific performance that they were entiled to a trial to determine whether it should be granted. It is to say that when a trial is held for that purpose, the ultimate question is one of exclusive equitable jurisdiction, i.e., whether a remedy that only equity can decree should be granted. Neither our State Constitution (Art. 1, § 20) nor our implementing rule of procedure (TR. 38(A)) requires "causes . . . of exclusive equitable jurisdiction" to be tried by jury.

9. It is only where common law type relief was rendered by equity courts prior to 1852 as incidental to equitable relief that there can be

ment rendered was a final appealable judgment because it disposed of all claims as to all parties. TR. 54(B). On its face, of course, it appears to be that and both parties, as well as the trial court, appear to have treated it as such.

If, after the entry of the decision denying equitable relief, plaintiffs had renewed their demand for a jury trial on their claim for damages and that renewed demand had been denied, we might now be faced with the question of whether we should remand the case to the *nisi prius* court for that trial. But there is nothing in the briefs to indicate that any renewed demand was made. Quite to the contrary, plaintiffs' written argument characterizes the whole action as one "at law for breach of contract" with prayer for damages, asserting that "the fact that . . . plaintiffs further seek relief . . . that standing alone . . . is synonymous with equitable remedy . . . does not alter or transform plaintiffs' complaint from an action at law to one of either exclusive equitable jurisdiction or of mixed law and equitable jurisdiction; plaintiffs were entitled by right to the trial of their action at law by a jury."[10]

What specific error or errors relating to denial of jury trial (if any) were set forth in the plaintiffs' motion to correct errors the briefs do not disclose. Assuming, *arguendo,* that errors were claimed in that motion consistent with plaintiffs' written argument made here, plaintiffs have preserved no error.[11] In thus erroneously treating their demands for

---

constitutional validity to the statement that "if any essential part of a cause is exclusively of equitable cognizance, the whole is drawn into equity." *Towns* v. *Smith* (1888), 115 Ind. 480, 481, 16 N. E. 811, 812. (That case, a creditor's bill, was apparently of that character.) If the "whole" was drawn in to equity prior to 1852, then the case is one of exclusive jurisdiction, triable by the court. If the "whole" was not so drawn in prior to 1852 and if, on denial of the claim to equitable relief, the plaintiff still had a remedy at law, he had a right to jury trial which must remain inviolate.

10. Appellants' brief, p. 66.

11. TR. 59(G) provides, in part: "Issues . . . [except in appeals from interlocutory orders, orders appointing or refusing to appoint receivers, or orders in proceedings supplemental to execution] may be considered on appeal only when included in the motion to correct errors. . . ."

equitable relief as merely incidental to their law action for damages for breach of contract and contending that the whole is triable by jury as of right they certainly invite the trial court and this court to find that plaintiffs have presented for adjudication but one action. And, clearly, if there is but one action, the prayer for relief which only. a court of equity prior to 1852 could grant indelibly marks. that one action as an action of exclusive equitable jurisdiction.[12]

The majority reaches the right result in holding that the trial court's judgment should be affirmed.

NOTE.—Reported in 284 N. E. 2d 834.

---

AP. 8.3(A)(7) provides, in part: "Each error assigned in the motion to correct errors that appellant intends to raise on appeal shall be set forth specifically [in the "argument" section of the appellants' brief] and followed by the argument applicable thereto." Further, AP. 8.3(A) concludes: "Any error alleged on the motion to correct errors not treated as herein directed shall be deemed waived."

